JOHN P. SHEEHY AND EDNA M. SHEEHY, PLAINTIFFS-RESPONDENTS, v. GEORGE R. GALIPEAU, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1957—Decided December 20, 1957.

96

Before Judges CLAPP, JAYNE and SCHETTINO.

*Mr. John W. Leyden, Jr.,* argued the cause for appellant (*Messrs. Leyden and Monaghan,* attorneys).

*Mr. Samuel M. Lyon, Jr.,* argued the cause for respondents (*Messrs. Doughty and Dwyer,* attorneys; *Mr. Michael A. Dwyer,* of counsel).

The opinion of the court was delivered by

JAYNE, J. A. D. Ordinarily the time within which a party can change his mind with legal immunity concerning a contractual transaction expires upon the execution of the agreement.

We acquire from the evidence in the present case the following narrative of the pertinent events. The plaintiffs, Mr. and Mrs. Sheehy, desired to convey their residential property consisting of a relatively large two-story dwelling situate upon approximately two acres of land at the northeast corner of the intersection of Ackerman Avenue and Meadow Lane in the Borough of Saddle River. To accomplish their purpose, they listed the premises for sale with the Board of Realtors of Ridgewood.

The defendant was a resident of East Leverett in the State of Massachusetts who was then interested in acquiring

an abode in Bergen County, New Jersey. He delegated his wife to do the shopping, in which pursuit she consulted one John E. Catlin, a realtor, by whom her attention was attracted to the plaintiffs' property.

On September 22, 1955 the defendant with his wife viewed the characteristics of the residence and its surroundings and entrusted Mr. Catlin with their deposit of $500. The following day the defendant entered into an agreement in writing with the plaintiffs to purchase the premises for the sum of $34,500.

The sale was not consummated. The defendant has candidly divulged the explanation:

"Q. Will you tell us what happened thereafter with respect to the property and your contract and agreement. A. Well, unfortunately I haven't checked this. We have a daughter who was then about thirteen and when she found out that we were going to move and sell the house she was very upset about it, and having lost her mother a few years before under doctors' advice they suggested if I didn't have to move that I shouldn't change residence at this time; that it might have some effect.

Q. So then what did you do? A. Well, the following Sunday which was one week—Friday is eight days, I believe, after thinking it over and talking with a lot of people and being rather confused about it, I finally made up my mind, called Mr. Catlin and asked him to prevail upon the Sheehys to let me out of the contract for the house."

The plaintiffs declined voluntarily to discharge the defendant from his contractual obligation to purchase the property. Negotiations of settlement ensued. The proposal of the defendant was:

"Q. I think you stated something about putting $2,000 in escrow. Were there any conditions to that putting $2,000 in escrow? A. Yes. The condition was that we would have a length of time within which I stated I felt that June 1—until June 1, to take advantage of whatever the best market was; that is, the spring market.

Q. And your agreement was that the house would be kept on the market until June 1? A. That is correct, that we would hope to have sold it, but that June 1 the money in escrow would then become available if it had not been sold or if it had to be sold for less than $34,500.

Q. You mean to say that you were going to give the Sheehys the $2,000 if it had not been sold by June 1? A. Yes, we would

forfeit the $2,000 if it had not been sold by that time. I further agreed to pay all the expenses incurred in heating the house, the taxes, the interest on those moneys due on the house, for that period of time, in addition to any loss that might be sustained in the sale of the house."

The method of adjustment suggested by the defendant was not agreeable to the plaintiffs, who expressly demanded in writing addressed to the defendant that the conveyance be consummated on February 6, 1956. The defendant did not appear to complete the conveyance at the time and place designated. Significantly, no request was made of the plaintiffs by the defendant to return the initial deposit of $500.

Meanwhile, however, the plaintiffs solicited another purchaser, evidently with the acquiescence of the defendant, and on February 4, 1956 the broker discovered a married couple who contracted to purchase the property for a consideration of $33,000. Although the property was relisted for sale at a higher asking price, efforts to obtain a price in excess of $33,000 were fruitless. The sale was consummated on July 31, 1956.

It is at once apparent that the defendant had for the frankly acknowledged reasons declined to perform his contract to purchase. The plaintiffs therefore instituted the present action against him in the Bergen County Court to recover from him their consequential loss. They were awarded by the judge presiding without a jury a judgment against the defendant in the sum of $1,000 damages, with interest thereon of $75 and costs. From this judgment the defendant appeals. Why? Noticeably the plaintiffs did not sue him for the recovery of the purchase price as a debt. *Corby v. Ward,* 112 *N. J. L.* 489, 492 (*E. & A.* 1934).

This action was instituted on March 15, 1956, and in May 1956, in response to the plaintiffs' complaint, the defendant for the first time announced to the plaintiffs by his answer and counterclaim that he had been defrauded. The declarations of the counterclaim, iterated at the pretrial conference, were that the defendant was enticed on September 22, 1955 to contract to purchase the premises by the false and fraudu-

lent representations of the broker Catlin which had the import that the plaintiffs owned the road known as Meadow Lane and had resurfaced it at a cost to them of $5,000. The defendant sought a rescission of his contract to purchase and the recovery of his down-payment of $500.

Upon consideration of the facts disclosed by the evidence, the trial judge deemed the counterclaim to be more artistic than realistic and denied the defendant his requested avoidance of liability. The court's adverse determination of that factual issue is one of the defendant's grounds of appeal.

We accordingly apply our attention to the state of the evidence pertinent to that issue. It is observed that at the time the trial of the action was moved, the broker, Mr. Catlin, was concededly ill and unable personally to appear and testify. However, there was evidence of influential weight and significance. A few illustrations are appropriate.

During the span of time ensuing the defendant's announcement of his refusal to purchase and throughout the period of the negotiations of settlement, the alleged misrepresentations of the broker were unmentioned.

On October 3, 1955 the attorney of the defendant dispatched the following letter to the plaintiffs:

"Dear Mr. and Mrs. Sheehy:

Confirming my telephone conversation today with Mr. Sheehy, please be advised that my client, Mr. George Galipeau, will be unable to purchase your home in accordance with the terms of the contract of sale dated September 23, 1955.

Mr. Galipeau sincerely regrets any inconvenience that his action may have caused you. I shall contact you immediately with a view to settling this matter amicably."

At the trial the court propounded the question to the defendant:

"The Court: You weren't very interested in the road?

The Witness: That is right."

In addition to the previously quoted proposal of the defendant to deposit $2,000 to cover the plaintiffs' loss, we notice the following excerpt from the defendant's testimony:

"Q. You never told them (the plaintiffs) that Mr. Katlan (*sic*) had made this misrepresentation—alleged misrepresentation? A. I never told them, no."

The defendant was not prejudicially deceived concerning the utilization of the road, for he testified:

"Q. That was a good serviceable road up there, wasn't it, this Meadow Brook lane in front of the Sheehy's property? A. Yes, it is a serviceable road.

Q. And in your opinion it would have carried the traffic that would have gone in and out of your house, would it not? A. That is correct."

Furthermore, the deed of conveyance of the premises to the plaintiffs was submitted to the defendant and his counsel for examination before the defendant executed the contract to purchase. This instrument embraced the following paragraphs concerning the abutting roads:

"Together with a right of way, in common with others, from the above described tract to Ackerman Avenue over a strip of land 33 feet in width as measured easterly at right angles from the easterly line of lands now or formerly of Max A. Kenyon. * * *

Together with the right of way in common with others over Ackerman Road from East Saddle River Road to the within described premises. The southerly fifteen (15) feet of the lands above described are contained within the bounds of said Ackerman Road."

Attached to the foregoing references is the proof that on the occasion of the defendant's initial inspection of the premises, there were in addition to the plaintiffs' residence also three others adjoining the road known as Meadow Lane. Obviously the road, Meadow Lane, was not confined to the sole use of the plaintiffs' property, and especially would this panoramic scene impress the trained mind of the defendant, whose profession was that of a graduate engineer.

To be available as a ground for the rescission of a contract, it is essential that the misrepresentation alleged to have been practiced by the one party upon the other shall have been of material significance, effective in deceiving the latter and in inducing him to enter into the agreement to

his injury. *Byard v. Holmes,* 34 *N. J. L.* 296 *(Sup. Ct.* 1870)*; Lembeck v. Gerken,* 86 *N. J. L.* 111 *(Sup. Ct.* 1914)*; Fischetto Paper Mill Supply, Inc. v. Quigley Co., Inc.,* 3 *N. J.* 149 (1949)*; Trautwein v. Bozzo,* 35 *N. J. Super.* 270 *(Ch.* 1955), affirmed 39 *N. J. Super.* 267 *(App. Div.* 1956)*; Black on Rescission and Cancellation (2d ed.),* § 35, *p.* 79.

In the state of the evidence to which we have referred, the factual conclusion of the trial judge that the defendant was not deceived by or relied upon the alleged representation appears to us to be beyond meritorious criticism. The dismissal of the counterclaim is accordingly affirmed. *Spagnuolo v. Bonnet,* 16 *N. J.* 546, 555 (1954)*; Builders Fair, Inc., v. Youmans,* 39 *N. J. Super.* 183, 185 *(App. Div.* 1956)*; New Jersey Highway Authority v. J. & F. Holding Co.,* 40 *N. J. Super.* 309, 317 *(App. Div.* 1956).

The appellant projects a point relating to the proof of the plaintiffs' damages. In essentiality, his insistence is that there was no competent proof of the market value of the premises at the time of the breach. Assuredly, the measure of damages to the vendor for the vendee's breach of his executory contract to purchase real estate is the difference between the contract price and the market value thereof at the time of the breach, less a credit for any deposits made on account of the purchase price. *Baerenklau v. Peerless Realty Co.,* 80 *N. J. Eq.* 26 *(Ch.* 1912)*; 55 *Am. Jur.* 918, § 524; 92 *C. J. S. Vendor & Purchaser* § 537c(1), *p.* 528. In relation to that element of plaintiffs' cause of action, evidence was introduced of the contract for the resale of the property dated February 4, 1956, and its consummation by conveyance, for the sum of $33,000. It is contended that in no circumstances is evidence of the resale price of itself relevant proof of the market value of the property. Not so.

Here it is evident that the defendant not only desired but acquiesced in a resale of the property to establish and perhaps mitigate his liability. In the factual circumstances of the present case, we favor the application of the

rule that where the resale is made under conditions as favorable as those of the original sale, and is made, as here, within a reasonable time especially with the acquiescence of the defaulting vendee, the resale price is *prima facie* though not conclusive evidence of the market value of the property in the admeasurement of damages. *Anderson v. Truitt,* 53 *Mo. App.* 590 (*Kansas City Ct. App.* 1893); *Hazleton v. Le Duc,* 10 *App. D. C.* 379 (1897); *Dooley v. Stillson,* 46 *R. I.* 332, 128 *A.* 217, 52 *A. L. R.* 1505 (*R. I. Sup. Ct.* 1925); *Ashcom v. Smith,* 2 *Pen. & W.* 211, 21 *Am. Dec.* 437 (*Pa.* 1830); *Kempner v. Heidenheimer,* 65 *Tex.* 587 (1886); *Cowdery v. Greenlee,* 126 *Ga.* 786, 55 *S. E.* 918, 8 *L. R. A., N. S.,* 137 (1906); *Downing v. H. G. Smithy Co.,* 125 *A. 2d* 272 (*Mun. Ct. App. D. C.* 1956); 52 *A. L. R.,* at *p.* 1514; 55 *Am. Jur.* 920, § 526; 92 *C. J. S. Vendor & Purchaser* § 537c(3), *p.* 530. There is no suggestion by the defendant that the plaintiffs were guilty of any *mala fides* in the resale of the premises.

Accordingly, the judgment in favor of the plaintiffs is affirmed.