591 A.2d 932

MILTON KUTZIN AND RUTH KUTZIN, HUSBAND AND WIFE, PLAINTIFFS–APPELLANTS, v. DUNCAN PIRNIE AND GERTRUDE PIRNIE, HUSBAND AND WIFE, DEFENDANTS–RESPONDENTS.

Argued March 19, 1991—Decided June 27, 1991.

*Harold Goldman* argued the cause for appellants.

*George Milanos* argued the cause for respondents (*Escala, Crabbe & Milanos,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

This is an action on a contract for the sale of residential property. The sellers' real-estate agent prepared the contract, after which defendants, the prospective buyers, signed it, paid a deposit of nearly ten percent of the purchase price, and then decided not to go through with the purchase. In the trial court the buyers argued that the contract had been rescinded because attorneys for both parties had sought to amend it during the three-day period provided by the contract's attorney-review clause. The court found the contract to be valid and awarded the sellers compensatory damages, albeit in an amount less than the deposit. The Appellate Division agreed that the contract is binding but held that the sellers are entitled to keep the entire deposit as damages. We granted certification, —— *N.J.* ——, —— *A.*2d —— (1990), to determine whether the contract is enforceable and, if so, whether the sellers should be allowed to keep the deposit. We affirm the Appellate Division holding that the contract is valid but modify that court's judgment on the issue of damages and reinstate the damage award of the trial court.

I

On September 1, 1987, defendants, Duncan and Gertrude Pirnie, and plaintiffs, Milton and Ruth Kutzin, signed a contract for the sale of the Kutzins' house in Haworth for $365,000. The contract, which is the standard-form real-estate sales contract adopted by the New Jersey Association of Realtors, had been prepared by Weichert Realtors (Weichert), the sellers' real-estate agent. Under its terms, the Pirnies agreed to pay a partial deposit of $1,000 on signing the contract and the remainder of the deposit, $35,000, within seven days. In compliance

therewith, the Pirnies made out a check for $1,000 to the trust account of Russo Real Estate (Russo), their real-estate agent. The contract does not contain a "forfeiture" or "liquidated damages" clause; with reference to the disposition of the deposit should the sale not take place, the contract merely states, "If this contract is voided by either party, the escrow monies shall be disbursed pursuant to the written direction of both parties."

The contract also contains the following attorney-review provision:

1. *Study by Attorney*

The Buyer or the Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three-day period. This contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of the contract.

2. *Counting the Time*

You count the three days from the date of delivery of the signed contract to the Buyer and the Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and the Seller may agree in writing to extend the three-day period for attorney review.

3. *Notice of Disapproval*

If an attorney for the Buyer or the Seller reviews and disapproves of this contract, the attorney must notify the REALTOR(S) and the other party named in this contract within the three-day period. Otherwise this contract will be legally binding as written. The attorney must send the notice of disapproval to the REALTOR(S) by certified mail, by telegram, or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the REALTOR(S) office. The attorney may also, but need not, inform the REALTOR(S) of any suggested revision(s) in the contract that would make it satisfactory.

The Kutzins' attorney, Marshall Kozinn, telephoned Russo on September 2nd to communicate his approval of the contract with one exception: he wanted to hold the deposit in his trust account pending closing. Kozinn followed up that conversation by mailing a letter to Russo dated September 3, 1987, with a copy to Joseph Maccarone, the Pirnies' attorney, which read:

As per our telephone conversation, the above contract is satisfactory to me as Attorney for the Seller with the exception that my clients have requested that I hold the deposit pending closing.

Would you please forward the One Thousand ($1,000.) Dollars to me, and arrange to have the $35,000. remaining deposit balance made payable to my attorney trust account.

Russo had already complied with Kozinn's request (without discussing the matter with Maccarone) by endorsing the Pirnies' check to Kozinn's trust account and sending it to him on September 2nd.

In a telephone conversation with Kozinn on September 4th, Maccarone agreed to allow Kozinn to hold the deposit but expressed his opinion that the contract prepared by Weichert did not provide adequate protection for the buyers. That same day Maccarone mailed to Kozinn the following letter:

This office shall be representing the Buyers, Duncan and Gertrude Pirnie with reference to [this] transaction.

I have reviewed the contracts prepared by the Realtor and I would like to propose the attached amendments which I have taken the liberty to prepare. If these forms meet with your approval, I would appreciate your having them executed by the Sellers and return them to me for execution by the Buyers.

I shall forward you the balance of the deposit shortly.

Maccarone enclosed with the letter his standard rider for protection of buyers of real estate. Significantly, the rider was silent on the issue of what would happen to the deposit if the sale were not completed.

On September 10th, Maccarone telephoned Kozinn to inquire if the terms of the rider were acceptable. When Kozinn indicated that they were not, the attorneys discussed their differences and eventually agreed on certain changes. During that conversation, Kozinn mentioned that he had not yet received the additional deposit of $35,000 and questioned whether the Pirnies intended to proceed with the purchase. Maccarone assured Kozinn of the Pirnies' intention to buy the house, stating that "if the deposit was to be any demonstration of good faith or what have you [Kozinn] would have the deposit." Kozinn received the Pirnies' check for the balance of the deposit the next day. Thus assured that the sale would occur, the Kutzins left for their Florida home on the 13th of September.

Maccarone revised the rider and on September 21st sent to Kozinn two copies, already signed by the Pirnies, for execution by the Kutzins. Kozinn received the copies of the modified rider on September 22nd and forwarded them to the Kutzins that same day. A letter accompanied the riders requesting, among other things, that the Kutzins sign and return the riders to Kozinn as soon as the couple returned from Florida. The Kutzins apparently received the letter when they returned to New Jersey on September 24th.

Shortly thereafter the Pirnies instructed their new attorney, Harold Goldman, to write Kozinn the following letter, which was mailed on September 28th:

> Be advised the Purnies [sic: "Pirnies" or "Pirnie" throughout] have retained my office to represent them in their effort to negotiate the purchase of a home in Haworth owned by your client, Milton Kutzin.
>
> Mrs. Purnie has indicated to me that the Purnies are no longer interested in purchasing the subject property. Therefore, please treat this letter as formal notice to withdraw the offer to purchase by the Purnies. I must add that the desire to withdraw the offer to purchase was communicated to Joan Harrison, the listing broker, yesterday by both Mrs. Purnie and [myself].
>
> It is my understanding that you are presently holding in trust deposit monies remitted by the Purnies in regard to the proposed purchase. Please call [me] to arrange for the return of said monies.

The Kutzins refused to return the deposit and promptly sued for specific performance of the contract. The Pirnies counterclaimed for return of their $36,000 deposit, contending that the contract had been validly rescinded either pursuant to the attorney-review provision or by agreement of the parties. Because the Kutzins sold the house to another buyer for $352,500 while the case was pending, they amended their complaint to seek only damages.

The trial court ruled that the parties had entered into a binding contract that had not been rescinded either by agreement or pursuant to the attorney-review clause. Consequently, the court held that the sellers were entitled to $17,325 in damages. That amount consisted of the $12,500 difference between the $365,000 the Pirnies had contracted to pay and the $352,500 for which the house eventually sold; $3,825 in utilities,

real-estate taxes, and insurance expenses the Kutzins had incurred during the six-month period between the originally-anticipated closing date and the date of actual sale; and $1,000 the Kutzins had paid for a new basement carpet, which their realtor had recommended they buy to enhance the attractiveness of their house to prospective buyers. The court denied recovery of interest the Kutzins contended they would have earned on the purchase price had the sale to the Pirnies gone through. It also refused to award damages for the increased capital-gains tax the Kutzins had paid as a result of the breach. The court ordered the Kutzins to return the $18,675 balance of the deposit to the Pirnies.

On appeal, the Kutzins argued that they should recover the lost interest and the increased capital-gains tax they had incurred, or, alternatively, that they should be allowed to retain the deposit. On cross-appeal the Pirnies claimed entitlement to the entire deposit, again asserting that the contract had been validly rescinded. In an unreported opinion, the Appellate Division found that the contract between the parties "was enforceable according to its terms" but that "the Kutzins' claims to compensation for their allegedly increased tax liability and lost interest were too speculative to be compensable." The court then noted that "the Kutzins' loss as determined by the trial court was less than the Pirnies' $36,000 deposit," and concluded that "the Kutzins are entitled to retain the [entire] deposit, but they may not recover any additional amount as damages."

## II

■ We first consider the Pirnies' argument that their contract to purchase the Kutzins' house had been rescinded in accordance with the contract's attorney-review provision, which is the standard clause approved by this Court in *New Jersey State Bar Association v. New Jersey Association of Realtor Boards*, 93 *N.J.* 470, 461 A.2d 1112, *modified*, 94 *N.J.* 449, 467

*A.*2d 577 (1983). The relevant clause in the contract is as follows:

> If an attorney for the Buyer or the Seller reviews and disapproves of this contract, the attorney must notify the REALTOR(S) and the other party named in the contract within the three-day period. Otherwise this contract will be legally binding as written. The attorney must send the notice of disapproval to the REALTOR(S) by certified mail, by telegram, or by delivering it personally.

Noting that that clause does not require the disapproving attorney to notify the other party's attorney, defendants contend that that omission "reflects the intent that the strict requirements for notice of disapproval are to be applied *only* when the attorney for one party is not aware of or has not been able to communicate or come to a meeting of the minds with the attorney for the other party."

We reject defendants' interpretation because "the governing language of the contract leaves no doubt as to its meaning. Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and we must enforce those terms as written." *Levison v. Weintraub*, 215 *N.J.Super.* 273, 276, 521 *A.*2d 909 (App.Div.1987) (referring to a different clause in the standard attorney-review provision) (citing *Kampf v. Franklin Life Ins. Co.*, 33 *N.J.* 36, 43, 161 *A.*2d 717 (1960)). To rescind the contract, either party's attorney would have had to send notice of disapproval during the three-day period to both Weichert and Russo "by certified mail, by telegram, or by delivering it personally." The record reveals that the only correspondence between the attorneys and the realtors during the three-day period in question was Kozinn's September 3rd letter to Russo. That letter did not disapprove of the contract; rather, it stated that "the * * * contract is satisfactory to me as Attorney for the Seller with the exception that my clients have requested that I hold the deposit pending closing," an exception that was accepted by both Russo and Maccarone. Moreover, Kozinn did not send the letter by certified mail, nor did he send a copy to Weichert.

Additionally, we note that although the clause is silent on the type of notice that must be given to the other party to the

contract, "[i]t is plainly conditioned * * * upon prompt notice to both the broker *and* the other party. A buyer, or seller, who has not received notice within the stated period can rely upon a binding arrangement." *Denesevich v. Moran,* 211 *N.J.Super.* 554, 556–57, 512 *A.*2d 505 (App.Div.1986). Kozinn did not send a copy of his letter of September 3rd to the Pirnies, but he did send a copy to Maccarone, their attorney. We need not reach the question of whether notice to the other party's attorney would have been sufficient to satisfy the requirement that the other party receive notice; however, we note that at the very least the better practice would have been for Kozinn to have sent notice of disapproval to the Pirnies as well as their attorney had he intended to rescind the contract pursuant to the attorney-review provision.

The only other written correspondence between those involved in the transaction during the three-day review period was Maccarone's September 4th letter to Kozinn. Like Kozinn's letter of the previous day, Maccarone's letter did not disapprove of the contract. Moreover, Maccarone did not send the letter by certified mail, nor did he send copies to Weichert, Russo, and the Kutzins.

■ If either attorney was not satisfied with the contract prepared by Weichert, he could have rescinded the contract by complying with the clear and unambiguous terms of the attorney-review provision. If the attorney was willing to proceed with the sale under different terms, he also could have informed the realtors of any suggested revisions in the contract that would have made it satisfactory. As another option, the attorney could have had his clients agree in writing to extend the three-day period for attorney review to allow the attorneys to continue to negotiate. Because neither attorney disapproved of the contract under the terms of the attorney-review provision, the contract between the Kutzins and the Pirnies was legally binding as written at the end of the three-day period, changed only in respect of the sellers' attorney holding the

deposit money. The Pirnies' refusal to go through with the purchase constituted a breach of that contract, and the Kutzins were entitled to rescind, to sell the house to a third party, and to recover damages caused by the Pirnies' breach.

### III

We next determine whether the Kutzins are entitled to retain the entire $36,000 deposit as damages. The issue of whether a seller should be entitled to retain a deposit when a buyer breaches a contract that does not contain a liquidated-damages or forfeiture clause has long troubled courts. As Professor Williston has observed, "Few questions in the law have given rise to more discussion and difference of opinion than that concerning the right of one who has materially broken his contract without legal excuse to recover for such benefit [here, the deposit] as he may have conferred on the other party * * *." 12 S. Williston, *A Treatise on the Law of Contracts* § 1473 at 220 (3d ed. 1961) (Williston).

### -A-

"[T]he common-law rule, which has been very generally followed * * *, [was] that where the vendee of real property makes a part payment on the purchase price, but fails to fulfill the contract without lawful excuse, he cannot recover the payment * * * even though the vendor may have made a profit by reason of the default." *Quillen v. Kelley*, 216 *Md.* 396, 401-02, 140 *A.*2d 517, 520 (1958); *see, e.g.*, Annotation, *Modern Status of Defaulting Vendee's Right to Recover Contractual Payments Withheld by Vendor as Forfeited*, 4 *A.L.R.*4th 993, 997 (1981) (The general rule is that "a vendee in default cannot recover back the money he has paid on an executory contract to his vendor who is not himself in default."). The thought behind that rule is that "restitution should always be refused, for the good and sufficient reason that the [buyer] is guilty of a breach of contract and should never be allowed to have advantage

from his own wrong." 5A A. Corbin, *Corbin on Contracts* § 1129 at 37 (1964) (Corbin); *see, e.g., Haslack v. Mayers,* 26 *N.J.L.* 284, 290–91 (Sup.Ct.1857) ("The plaintiff here has deliberately broken his covenant with the defendant * * *. For the court to aid him[ ] would be to lend its aid to an act of bad faith. * * * Let him perform his contract * * * or * * * the loss is the consequence of his own act.").

New Jersey traditionally has adhered to the common-law rule. As the Appellate Division stated in *Oliver v. Lawson,* 92 *N.J.Super.* 331, 333, 223 *A.*2d 355 (1966), *certif. denied,* 48 *N.J.* 574, 227 *A.*2d 133 (1967), "It has heretofore generally been held in New Jersey that * * * the defaulting buyer may not recover his deposit, irrespective of the actual damages suffered by the seller and regardless of whether the contract contains a forfeiture provision or not." *See Earlin v. Mors,* 1 *N.J.* 336, 342, 63 *A.*2d 531 (1949) (If "contract contains no provisions for damages in the event of a breach," then "a purchaser who alone repudiates the contract without justifiable cause * * * cannot recover under it."); *Central Steel Drum Co. v. Gold Cooperage, Inc.,* 200 *N.J.Super.* 251, 262, 491 *A.*2d 49 (App.Div.1985) ("In the real estate sales context courts have upheld the retention of deposit monies by the seller where the buyer has breached."); *McEnaney v. Spedick,* 13 *N.J.Super.* 37, 41, 80 *A.*2d 237 (App.Div.1951) ("Where the parties have entered into a binding agreement, and the buyer defaults thereunder, the seller may, in general, retain the deposit as damages."); *Bernstein v. Rosenzweig,* 1 *N.J.Super.* 48, 52, 62 *A.*2d 147 (App.Div. 1948) ("[W]here the parties have entered into a binding agreement, and the buyer defaults thereunder, the seller may, in general, retain the deposit as damages."); *Katz v. Katz,* 134 *N.J.L.* 303, 304, 47 *A.*2d 423 (Sup.Ct.1946) ("Where a contract contains no stipulation as to damages for its breach a purchaser who alone repudiates the contract without justifiable cause * * * cannot recover what he has paid under it."); *Wong v. Mercado,* 248 *N.J.Super.* 215, 233, 590 *A.*2d 723, 732 (Law Div. 1991) ("The seller of real property[ ] who is without fault[ ] has

the right to retain the deposit paid by a buyer who refuses to perform in breach of a contract, even if the seller has not sustained any actual damage * * *."); *Kingdon v. Sickler,* 2 *N.J.Super.* 183, 185–86, 62 *A.*2d 710 (Ch.Div.1948) ("[A] vendee who refuses or is unable to perform his contract can not recover the earnest money paid, if the vendor is ready, willing and able to perform on his part."); *see also Krupnick v. Guerriero,* 247 *N.J.Super.* 373, 376–381, 589 *A.*2d 620, 622–624 (App.Div.1990) (reviewing relevant cases); *Thomas F. Ruane Dev. Corp. v. Cullere,* 134 *N.J.Super.* 245, 252, 339 *A.*2d 229 (App.Div.1975) (applying common-law rule); *Sheehy v. Galipeau,* 48 *N.J.Super.* 95, 102, 137 *A.*2d 5 (App.Div.1957) (same); *Steinbach v. Pettingill,* 67 *N.J.L.* 36, 50 *A.* 443 (Sup.Ct.1901) (same).

Following that long line of cases, the Appellate Division held that the Kutzins are entitled to retain the deposit even though the court was "sympathetic to the trial judge's ruling that the Pirnies were entitled to the return of the balance of their $36,000 contract deposit in excess of the Kutzins' actual damages."

-B-

Despite the ample authority supporting the Appellate Division's disposition of the damages question, "there has been a growing recognition of the injustice that often results from the application of the rule permitting total forfeiture of part payments under a contract of sale." *Great United Realty Co. v. Lewis,* 203 *Md.* 442, 448, 101 *A.*2d 881, 883 (1954); *see also Quillen v. Kelley, supra,* 216 *Md.* at 402, 140 *A.*2d at 520 ("In applying [the common-law] rule, there have been instances of harshness and injustice, which have caused a reconsideration of the same, in recent years, by the courts and by learned and renowned scholars and text-writers on the subject of contracts.").

Professor Corbin led the movement favoring departure from the strict common-law rule. In *The Right of a Defaulting*

*Vendee to the Restitution of Instalments Paid,* 40 *Yale L.J.* 1013, 1013 (1931) (*Defaulting Vendee*), he stated:

> If a contractor has committed a total breach of his contract, having rendered no performance whatever thereunder, no penalty or forfeiture will be enforced against him; he will be required to do no more than to make the injured party whole by paying full compensatory damages. In like manner, a contractor who commits a breach after he has rendered part performance must also make the injured party whole by payment of full compensatory damages. The part performance rendered, however, may be much more valuable to the defendant than the amount of the injury caused by the breach; and in such case, to allow the injured party to retain the benefit of the part performance so rendered, without making restitution of any part of such value, is the enforcement of a penalty or forfeiture against the contract-breaker.

Corbin went on to declare that if a plaintiff "can and does show by proper evidence that the defendant is holding an amount of money as a penalty rather than as compensation for injury, he should be given judgment for restitution of that amount." *Id.* at 1025–26 (footnote omitted). He then concluded that

> [t]he cases denying restitution can * * * be justified on one or more of the following grounds: (1) The defendant has not rescinded and remains ready and willing to perform, and still has a right to specific performance by the vendee; (2) the plaintiff has not shown that the injury caused by his breach is less than the instalments received by the defendant; (3) there is an express provision that the money may be retained by the vendor and the facts are such as to make this a genuine provision for liquidated damages, and not one for a penalty or forfeiture. *If the facts are such that none of these justifications exists, restitution should be allowed.* [*Id.* at 1032–33 (footnote omitted) (emphasis added).]

Professor Corbin's article formed the basis for sections 1122 to 1135 of his treatise, *Corbin on Contracts* (see especially section 1129 on restitution of installments in favor of a defaulting purchaser of land), and also was used in the formulation of section 357 of the *Restatement of Contracts* (1932). See 5A Corbin, *supra,* § 1135 at 89. Section 357, which "has been accepted in the Federal Courts, and most of the State Courts that have relaxed from the common-law rule," *Quillen v. Kelley, supra,* 216 *Md.* at 403–04, 140 *A.*2d at 520, states:

> (1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment, except as

stated in Subsection (2), for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if

(a) the plaintiff's breach or non-performance is not wilful and deliberate; or

(b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious.

(2) The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

(3) The measure of the defendant's benefit from the plaintiff's part performance is the amount by which he has been enriched as a result of such performance unless the facts are those stated in Subsection (1b), in which case it is the price fixed by the contract for such part performance, or, if no price is so fixed, a ratable proportion of the total contract price.

That section was adopted by the Appellate Division in *Power-Matics, Inc. v. Ligotti*, 79 *N.J.Super.* 294, 306–07, 191 *A.*2d 483 (1963), in which the plaintiff sought recovery for its part performance after it had breached a contract to build a porch. The court concluded that the "plaintiff should have been allowed to offer evidence to establish, if it could, a right to recover the amount of the benefit it conferred upon defendants in excess of the harm it had caused defendants by its own breach—rather than be compelled to suffer a complete forfeiture." *Id.* at 307, 191 *A.*2d 483.

Section 374(1) of the *Restatement (Second) of Contracts* is based on section 357 but "is more liberal in allowing recovery in accord with the policy behind Uniform Commercial Code § 2–718(2)." *Restatement (Second) of Contracts* § 374 reporter's note (1981). That section sets forth the rule as follows:

[I]f a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach. [*Id.* § 374(1).]

Particularly relevant to this case is the following illustration:

A contracts to sell land to B for $100,000, which B promises to pay in $10,000 installments before transfer of title. After B has paid $30,000 he fails to pay

the remaining installments and A sells the land to another buyer for $95,000. B can recover $30,000 from A in restitution less $5,000 damages for B's breach of contract, or $25,000. If A does not sell the land to another buyer and obtains a decree of specific performance against B, B has no right to restitution. [*Id.* § 374 illustration 1.]

Since publication of the first *Restatement of Contracts* in 1932, few courts have followed the common-law rule refusing restitution. See 5A Corbin, *supra,* § 1129 at 37–38. The *Restatement* approach of allowing recovery "has steadily increased in favor and probably represents the weight of authority." 12 Williston, *supra,* § 1473 at 222 (footnote omitted). In 1941 the Supreme Court of Rhode Island, in the context of a suit to recover a deposit by a buyer who had breached a real-estate contract, stated the common-law rule but recognized an "exception" allowing recovery for a defaulting vendee in the absence of a liquidated-damages clause "in certain instances where a person has received from another a benefit the retention of which would be unjust under some legal principle or situation which equity has established or recognized." *Seekins v. King,* 66 *R.I.* 105, 110, 17 *A.*2d 869, 871. By 1953 the Supreme Court of Wisconsin was able to state that its holding was "in accord with the trend of modern decisions which recognize that when the result of retention of moneys paid upon a contract by a vendee who later repudiates his obligation is a clear[ ] unjust enrichment of the vendor, the vendor may be required to return such part of the payments as exceeds the loss which the vendee's default causes him." *Schwartz v. Syver,* 264 *Wis.* 526, 531, 59 *N.W.*2d 489, 492. And in *Wilkins v. Birnbaum,* 278 *A.*2d 829, 831 (1971), the Supreme Court of Delaware recognized that "a defaulting buyer [who] can prove that the deposit exceeds in amount the actual damages resulting from the breach [can] recover back the excess, but the burden of proving this is placed on him." See also *Newcomb v. Ray,* 99 *N.H.* 463, 467, 114 *A.*2d 882, 884 (1955) ("the strict common-law rule has long been relaxed in this state"); *DeLeon v. Aldrete,* 398 *S.W.*2d 160, 163 (Tex.Civ.App.1965) (rule that "makes the right of the purchaser depend on the equities of

each case leaves room for the consideration of all relevant factors, especially the all-important considerations of the amount [that] the purchaser has paid and the extent to which the vendor has been injured by the breach"); Annotation, *supra,* 4 *A.L.R.*4th at 1026–27 (citing "cases containing no forfeiture provision [that] support or recognize the principle that[ ] in view of equitable considerations, a defaulting vendee may recover payments made to the extent that they exceed the damages sustained by the vendor as a result of the breach").

The leading New Jersey case is *Oliver v. Lawson, supra,* 92 *N.J.Super.* 331, 223 *A.*2d 355, in which the court permitted the seller to retain the breaching buyer's $20,000 deposit on a $215,000 contract even though the seller had sold the property at no significant loss. After recognizing that New Jersey follows the strict common-law rule, the court acknowledged that

> [p]laintiffs argue that the more modern view would allow the seller to retain only so much of the deposit as would compensate him for his actual damage sustained. Reference is made to *Restatement, Contracts,* § 357 (1932), and 5 *Williston on Contracts (rev. ed.* 1937), §§ 1473–1477. Undoubtedly, this is true in some jurisdictions but, as *Williston* points out in § 791 (*3d ed.* 1961), "the great majority of decisions deny the buyer relief." The question was recognized by our court in *Bernstein v. Rosenzweig* and *McEnaney v. Spedick,* * * * in each of which recovery of the deposit was denied. However, we found it unnecessary for decision in those cases because the deposit in each instance was not so proportionately large as to concern the court. The deposit was less than 1% of the purchase price in *Bernstein* and less than 4% of the purchase price in *McEnaney.* [*Id.* at 334, 223 *A.*2d 355.]

The court in *Oliver* then denied recovery to the breaching buyers, stating that "[t]hey failed to present any adequate proof of an unjust enrichment." *Id.* at 336, 223 *A.*2d 355.

Although *Oliver* accurately points out that the result in *Bernstein v. Rosenzweig, supra,* 1 *N.J.Super.* 48, 62 *A.*2d 147 turned on the minimal amount of the deposit in that case, the latter opinion did question the common-law rule and approved of the modern approach of the *Restatement.* See *Comerata v. Chaumont, Inc.,* 52 *N.J.Super.* 299, 308, 145 *A.*2d 471 (App. Div.1958) ("An approval of the rule of the *Restatement,* if

understood to make the penalty proviso applicable to deposits even where there is no stipulation for retention in the event of payor's default, is implied in *Bernstein* * * *."). In *Bernstein*, Judge (later Justice) Jacobs stated, "Question may occur as to whether [the common-law rule] should be applicable where the deposit was so disproportionately large that its entire retention by the seller would appear to be a penalty or forfeiture rather than damages." 1 *N.J.Super.* at 53, 62 *A.*2d 147 (citing *Restatement of Contracts, supra,* § 357; 5 Williston, *supra,* § 1476 (rev. ed. 1937)). The court did not answer the question in that case because the breaching buyer apparently had not shown that the minimal deposit exceeded the actual injury caused by the breach. See *ibid.*

With the issue squarely presented in this case, we overrule those New Jersey cases adhering to the common-law rule and adopt the modern approach set forth in section 374(1) of the *Restatement (Second) of Contracts.* In Professor Williston's words, "to deny recovery [in this situation] often gives the [seller] more than fair compensation for the injury he has sustained and imposes a forfeiture (which the law abhors) on the [breaching buyer]." 12 Williston, *supra,* § 1473 at 222. The approach that we adopt is suggested to have the added benefit of promoting economic efficiency: penalties deter "efficient" breaches of contract "by making the cost of the breach to the contract breaker greater than the cost of the breach to the victim." R. Posner, *Economic Analysis of Law* § 4.10 at 116 (3d ed. 1986).

–C–

We conclude that the Pirnies are entitled, under the *Restatement* formulation of damages, to restitution for any benefit that they conferred by way of part performance or reliance in excess of the loss that they caused by their own breach. See *Restatement (Second) of Contracts, supra,* § 374(1). We stress, however, that "[o]ne who charges an unjust enrichment has the burden of proving it." *Oliver v. Lawson, supra,* 92 *N.J.Super.* at 336, 223 *A.*2d 355 (citing 5A Corbin, *supra,*

§ 1132 at 64; *Quillen v. Kelley, supra,* 216 *Md.* 396, 140 *A.*2d 517); *accord Seekins v. King, supra,* 66 *R.I.* 105, 17 *A.*2d 869. As Professor Corbin stated:

> Whether the vendor has "rescinded" for the vendee's breach or not, and whether there is an express provision for forfeiture or not, it is clear that the vendee in default should in no case be given restitution of money paid unless it affirmatively appears that the money so paid is in excess of the injury caused to the vendor by the breach. The vendee sues because he asserts that retention of the money is unjust enrichment; but there is no injustice if the defendant is retaining no more than the amount of injury caused by the plaintiff's breach. In cases where the plaintiff may have a right of restitution, he should be permitted to show that the defendant's injury is less than the instalments paid; but unless he successfully shows this, he should recover nothing. [*Defaulting Vendee, supra,* 40 *Yale L.J.* at 1023.]

The trial court found that the Kutzins had suffered $17,325 in damages, a figure that we accept because it is not challenged in this Court. The Pirnies' deposit of $36,000 exceeded the injury caused by their breach by $18,675, and they are thus entitled to recovery of that amount.

Our holding is not affected by the fact that the $36,000 deposit was less than ten percent of the $365,000 purchase price. *Cf. Krupnick v. Guerriero, supra,* 247 *N.J.Super.* at 380, 589 *A.*2d at 624 ("As a general rule a defaulting buyer may not recover a deposit which does not materially exceed 10% * * *."). Whenever the breaching buyer proves that the deposit exceeds the seller's actual damages suffered as a result of the breach, the buyer may recover the difference.

### III

To ensure that our opinion not be misread, we emphasize that the contract at issue does not contain a forfeiture or liquidated-damages clause; it merely states, "If this contract is voided by either party, the escrow monies shall be disbursed pursuant to the written direction of both parties." The contract is otherwise silent on the subject of what would happen to the deposit were the sale not to occur. Had the contract contained a liquidated-damages clause, this case would have been governed by section 374(2) of the *Restatement (Second) of Contracts,* which states:

To the extent that, under the manifested assent of the parties, a party's performance is to be retained in the case of breach, that party is not entitled to restitution if the value of the performance as liquidated damages is reasonable in the light of the anticipated loss caused by the breach and the difficulties of proof of loss.

Although we do not consider the validity or enforceability of a liquidated-damages clause in this case, we are reminded of Professor Corbin's warning: "Penalties and forfeitures are not favored; and calling an outrageous penalty by the more kindly name of liquidated damages does not absolve it from its sin." *Defaulting Vendee, supra,* 40 *Yale L.J.* at 1016; *cf. Central Steel Drum Co. v. Gold Cooperage, Inc., supra,* 200 *N.J.Super.* 251, 491 *A.*2d 49 (considering validity of liquidated-damages clause).

## IV

We hold that the contract between the Kutzins and the Pirnies was not rescinded under the terms of its attorney-review clause. Thus, the Pirnies' refusal to proceed constituted a breach of contract entitling the Kutzins to recover compensatory damages for the loss they suffered as a result of the breach. We also hold that the Kutzins cannot retain the entire deposit as damages. The Pirnies are entitled to restitution of their deposit less the amount of the injury to the Kutzins caused by the Pirnies' breach. To allow retention of the entire deposit would unjustly enrich the Kutzins and would penalize the Pirnies contrary to the policy behind our law of contracts.

The judgment of the Appellate Division is modified to reinstate the trial court's damage award. As modified the judgment is:

Affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.