NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-3796-13T2

MICHAEL CONLEY, JR. and
KATIE M. MAURER,

     Plaintiffs-Appellants,

v.

MONA GUERRERO, BRIAN
KRAMINITZ, and MICHELE TANZI,

     Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 5, 2015**
>
> **APPELLATE DIVISION**

     Argued May 19, 2015 — Decided November 5, 2015

     Before Judges Messano, Ostrer and Tassini.

     On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. C-12005-14.

     William J. Kearns argued the cause for appellants (Kearns & Duffy, P.C., attorneys; Mr. Kearns, on the briefs).

     Martin Liberman argued the cause for respondent Mona Guerrero (Law Offices of Martin Liberman, attorneys; Mr. Liberman, on the brief).

     Robert J. Machi argued the cause for respondents Brian Kraminitz and Michele Tanzi (Morgan Melhuish Abrutyn, attorneys; Mr. Machi, of counsel and on the brief; Joshua Heines, on the brief).

     F. Bradford Batcha argued the cause for amicus curiae New Jersey State Bar Association (Sharon A. Balsamo, General

Counsel, attorney; Miles S. Winder, III, President, of counsel; Mr. Batcha, Stuart J. Lieberman, and Heather G. Suarez, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

The issue in this appeal is whether defendant-seller of a residence effectively terminated her sale agreement with plaintiffs-buyers during the "three day review" authorized by the agreement, in accordance with New Jersey State Bar Association v. New Jersey Association of Realtor Boards, 93 N.J. 470 (1983), mod., 94 N.J. 449 (1983), and N.J.A.C. 11:5-6.2(g)(2). Plaintiffs challenged the seller's termination, and appeal from the summary judgment order of the General Equity Part dismissing their complaint to enforce the sale agreement. We affirm.

I.

The facts are undisputed. On January 12, 2014, plaintiffs Michael Conley, Jr. and Katie M. Maurer signed a form contract to purchase a condominium unit in Bernards Township that defendant Mona Guerrero had offered for sale. The contract price was $292,000, and plaintiffs paid a $1000 deposit. Guerrero signed the contract two days later, and the executed contract was delivered on Wednesday, January 15, 2014.

The Guerrero-to-Conley[1] contract included the standard attorney review provision, which provides that notice of disapproval must be sent to the realtor by "certified mail, by telegram or by delivering it personally." It states:

> The Buyer or the Seller may choose to have an attorney study this Contract. If any attorney is consulted, the attorney must complete his or her review of the Contract within the three-day period. This Contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of the Contract.
>
> . . . .
>
> If an attorney for the Buyer or the Seller reviews and disapproves of the Contract, the attorney must notify the REALTOR(S) and the other party named in this Contract within the three-day period. Otherwise this Contract will be legally binding as written. The attorney must send the notice of disapproval to the REALTOR(S) by certified mail, by telegram or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the REALTOR's office. The attorney may also, but need not, inform the REALTOR(S) of any suggested revision(s) in the Contract that would make it satisfactory.

As a result of a three-day weekend, the attorney review period extended to Tuesday, January 21, 2014. Weichert Realtors,

_____

[1] For convenience, we use only one buyer's name in referring to the contract.

through its "authorized representative[]," served as a disclosed dual agent on the contract.

After the agreement was executed, Guerrero's agent received competing offers to purchase the property. Plaintiffs were aware of this. They sent a handwritten note to Guerrero, describing their personal circumstances, and their desire for the house. The note stated, "I hope that we are able to come to an agreement that works for both sides." On or about January 15, plaintiffs increased their offer to $298,000.

Meanwhile, defendants Brian Kraminitz and Michele Tanzi offered to pay $307,500, as reflected in an agreement they and Guerrero signed on January 16, 2014. The attorneys for Guerrero, and Kraminitz and Tanzi, negotiated various modifications to the contract, which the attorneys deemed binding on January 20, 2014.

On January 16, 2014, the Weichert agent asked Guerrero's attorney, Martin D. Eagan, to transmit a disapproval of the Guerrero-to-Conley contract.[2] On January 20, 2014, an attorney

---

[2] Defendant asserted that a second Weichert agent stepped in to represent only Guerrero, because the original Weichert agent was a dual agent. However, the Guerrero-to-Conley contract identified Weichert as the dual agent and the named agent as Weichert's representative. Moreover, the first Weichert agent, not the second, asked Guerrero's attorney to "void" the Guerrero-to-Conley contract, noting she was representing both buyer and seller.

in Eagan's office by letter advised plaintiffs' attorney, William Kearns, that the Guerrero-to-Conley agreement was terminated, stating, "This will confirm that the above-referenced contract has been terminated by the seller and the realtors are hereby authorized to release the initial deposit monies to the buyers." The letter was sent by email and facsimile to Kearns; the agent at Weichert was "cc'd" on the email. It was undisputed that Kearns and the agent received the letter on January 20, 2014. Plaintiffs do not deny that they also received notice of the letter.

On January 23, 2014, Kearns faxed a letter to Eagan asserting that the Guerrero-to-Conley contract was in "full force and effect" because "the 3 days within which an attorney may terminate this contract has expired." Eagan and Kearns then exchanged emails disputing the effectiveness of the January 20, 2014 notice. Plaintiffs filed a verified complaint and proposed order to show cause, seeking specific performance of the Guerrero-to-Conley contract and other relief. Plaintiffs included Kraminitz and Tanzi as defendants.

Plaintiffs argued that the January 20 termination was ineffective because it was not sent in accord with the contract's attorney review provision. Kearns, plaintiffs' counsel, admitted: "My clients . . . were informed that their

contract would be cancelled as other offers were being received after their initial offer was made and accepted, and a valid and binding contract executed, subject to attorney review." However, he asserted that plaintiffs, in making an increased offer, did not "rescind or abandon their contract, but were merely offering to create a new contract when and if their contract was cancelled or disapproved." Eagan, Guerrero's counsel, asserted "it has become the standard and customary practice in residential real estate transactions to use email and facsimile notification at the time of contract disapproval in lieu of a certified mailing."

Judge Edward M. Coleman denied temporary injunctive relief. As the facts were undisputed, Guerrero and plaintiffs filed competing motions for summary judgment. In a cogent written opinion, Judge Coleman granted defendants' motion, dismissing plaintiffs' complaint. Judge Coleman noted that the attorney review provision requires notice of disapproval to the broker and the other party, but specifies the method of delivery only as it relates to the notice to the broker. He discussed the history and purpose of the provision, citing N.J. State Bar Ass'n v. N.J. Ass'n of Realtor Bds., 93 N.J. 470 (1983). Judge Coleman then analyzed three cases that construed the provision — Kutzin v. Pirnie, 124 N.J. 500 (1991); Romano v. Chapman, 358

6

N.J. Super. 48 (App. Div.), certif. denied, 176 N.J. 431 (2003); and Gaglia v. Kirchner, 317 N.J. Super. 292 (App. Div. 1999) — and found that none controlled the parties' dispute.

Judge Coleman noted that Kutzin held a contract was not effectively rescinded where the attorneys for buyer and seller discussed modifications to the contract, but "there was no evidence of any form of specific disapproval within the review period." See 124 N.J. at 507-08. Unlike in the instant case, that notice came only after the review period had expired. Id. at 505. Judge Coleman also discussed Romano, where we held that once the attorneys approved an agreement during the attorney review period — which did not occur here — a party may not terminate, even if the period was unexpired. 358 N.J. Super. at 56-57.

Finally, Judge Coleman discussed Gaglia, which addressed an attempt by the buyer to enforce a contract by alleging that his own notice of disapproval was ineffective because it was sent by fax and ordinary mail, and only to sellers' counsel. See 317 N.J. Super. at 298. Judge Coleman noted that Gaglia was denied relief because he was not permitted to rely on his own counsel's deviations from the mandated procedure.

Judge Coleman recognized that generally, clear and unambiguous contract provisions must be enforced as written,

citing Levison v. Weintraub, 215 N.J. Super. 273, 276 (App. Div. 1987). However, the judge wrote, "[T]his is a [c]ourt of equity in which we are permitted to apply substance over form," citing Applestein v. United Bd. & Carton Corp., 60 N.J. Super. 333, 348 (Ch. Div. 1960). The judge continued:

> The purpose of the attorney review clause approved within the settlement in Bar Ass'n II, was to "protect parties against being bound by broker-prepared contracts without the opportunity to obtain adequate protection of their separate interests." Levi[]son, supra, 215 N.J. Super. at 277. It is undisputed that all parties to this transaction were represented by counsel and counsel were actually consulted, thus the underlying justification for the attorney review clause itself was satisfied. Further, Guerrero's breach was minor as it is further undisputed that Plaintiffs' were on actual notice of Guerrero's termination within the three-day period for attorney review. The essential purpose of the notice provision is to ensure actual notice and that was accomplished here.

This appeal followed. Plaintiffs argue that Guerrero was required to strictly adhere to the contractual provision specifying the methods of delivery. Defendants and amicus curiae, the New Jersey State Bar Association, generally respond that the termination notice in this case substantially complied with the contract and that actual notice was accomplished, thereby satisfying the underlying purpose of the notice provision.

8

We review the trial court's grant of summary judgment de novo. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). We conclude, as did Judge Coleman, that defendant's counsel's disapproval of the contract was effective.

Notice of disapproval must be sent to both the other contracting party and that party's real estate agent. See N.J. State Bar Ass'n, supra, 93 N.J. at 476. In the original settlement between the State Bar and the New Jersey Association of Realtor Boards, notice was to be provided only to the real estate professional; however, the Court modified the agreement to require notice to the contracting parties. Compare N.J. State Bar Ass'n v. N.J. Ass'n of Realtor Bds., 186 N.J. Super. 391, 395 (Ch. Div. 1982) (describing notice only to broker), with N.J. State Bar Ass'n, supra, 93 N.J. at 477 (language as modified by the Court).

The contract prescribes the method of delivery only for notice to the agent. Any form of actual notice suffices as pertains to the buyer. Based on the history of the provision, the method-of-delivery provision was apparently designed to protect the interests of the real estate professionals, not the contracting parties. See Peterson v. Pursell, 339 N.J. Super. 268, 276 (App. Div. 2001) (noting that the interests of the

broker and the party "may not be congruent"); <u>Denesevich v. Moran</u>, 211 <u>N.J. Super.</u> 554, 557 (App. Div. 1986) (declining to treat the broker as a "fiduciary so as to impute notice to the party" in part because "a broker's role is to bring the parties together and act as a conduit for negotiations"). By contrast, the three-day-review itself was designed to protect parties from being bound by realtor-prepared contracts, without the benefit of legal counsel. <u>Levison</u>, <u>supra</u>, 215 <u>N.J. Super.</u> at 276. This obviously served the interests of the legal profession as well.

The method-of-delivery provision, as well as the entire attorney review provision, arose out of a dispute between the bar and the real estate professionals. The provisions are mandated, even if contracting parties would prefer to waive them. <u>See</u> <u>N.J. State Bar Ass'n</u>, <u>supra</u>, 93 <u>N.J.</u> at 481 (enjoining real estate brokers from preparing contracts that would "waive, disclaim, relinquish or abridge the right of the parties" to attorney review).

In this case, plaintiffs' right to notice of disapproval — which is not subject to the method-of-delivery requirements — was satisfied. Instead, plaintiffs seek to enforce the rights of the agent to notice that complies with the method-of-delivery requirements. However, the agent does not complain about the deviation from the prescribed method of delivery.

A-3796-13T2

Even assuming the buyers may enforce the agent's right to notice by the prescribed method of delivery, there was substantial compliance. Enforcement of the method-of-delivery provision here would result in a forfeiture of Guerrero's right to disapprove the contract. Given Guerrero's substantial compliance, that forfeiture should be avoided.

"'To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.'" Gazis v. Miller, 378 N.J. Super. 59, 65 (App. Div. 2005) (quoting Restatement (Second) of Contracts, § 229 (1981)), aff'd, 186 N.J. 224 (2006). Disproportionality is a flexible concept; its application rests within the court's sound discretion. Restatement (Second) of Contracts, § 229 comment b (1981). In determining whether a forfeiture is disproportionate, we weigh the extent of forfeiture against "the importance to [plaintiffs] of the risk from which [they] sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused . . . ." Ibid.

Here, defendant's right of disapproval was conditioned on notice that complies with the specified methods of delivery. However, compliance with the condition was not a material part

of the parties' agreement; it was imposed upon them by the consent judgment in N.J. State Bar Ass'n. Enforcement of the condition would cause a forfeiture — the loss of Guerrero's right to disapprove the contract and enter into an agreement with others. Applying that balance, the weight of Guerrero's forfeiture predominates, inasmuch as plaintiffs avoided the result the condition was designed to avoid — lack of actual notice. See Del. Steel Co. v. Calmar S.S. Corp., 378 F.2d 386, 387-89 (3d Cir. 1967) (stating that "no legitimate interest" of the defendant-carrier would be served and it would "plainly be inequitable" to bar an action of the plaintiff-shipper who failed to timely file a written notice of claim of damage, as required by a bill of lading, where the carrier received written notice that the shipped goods were damaged, the carrier was aware of the damage, and the shipper orally advised the carrier that a damage claim would be made).

Substantial compliance may be more liberally applied in this case because the attorney review provision, in particular the notice requirement, is not the product of an arm's length agreement of the two contracting parties. Rather, the provisions are imposed upon buyers and sellers by the consent judgment approved by the Court in N.J. State Bar Ass'n, supra. Cf. Corcoran v. St. Peter's Med. Ctr., 339 N.J. Super. 337, 343-

44 (App. Div. 2001) (applying substantial compliance doctrine to service of a demand for a trial de novo pursuant to R. 4:21A-6(b)(1)); 13 Williston on Contracts § 38:12 (Lord ed. 2013) (distinguishing between contractual provisions expressing "the will of the parties" and conditions "the law itself had imposed . . . in absence of or irrespective of the manifested intention of the parties," which the court may relax "so as to do justice and avoid hardship.").

Our holding that the attorney here effectively terminated the contract by substantially complying with the notice requirement is not inconsistent with previous decisions construing the attorney review provision. Plaintiffs contend that Peterson, supra, compels a result in their favor. We disagree. In Peterson, the buyers alleged that the seller's termination of the sale agreement was untimely. 339 N.J. Super. at 271. We rejected the buyers' argument that the attorney review period commenced when the buyers delivered a fully executed purchase agreement to the seller's broker, and not to the seller. Id. at 273-75. We held that even if later delivery to the seller's attorney constituted delivery to the seller — since the seller had directed that the signed contract be delivered to her attorney — the termination was timely made within three days thereafter. Id. at 276-77.

A-3796-13T2

We held that the buyers were required to strictly adhere to the contractual and regulatory language. Id. at 276. However, we did so because delivery of a signed agreement to the seller's real estate broker did not achieve the purpose underlying the requirement of delivery to the seller.

> Not only does plaintiff's argument violate the plain language of the attorney review provision, but it ignores the reality of the real estate transaction and, indeed, common sense. A broker's interest lay solely in negotiating a signed contract and obtaining a commission. [A] broker's role is to bring the parties together and [to] act as a conduit for negotiations. Its goal is simply to put the deal together. In approving the settlement agreement, the Supreme Court provided for the intervention of an attorney because the interests of the broker and those of a party may not be congruent. To clothe the broker with the attributes of a fiduciary in this context so as to impute delivery to a party by reason of delivery to the broker is unrealistic.
>
> [Ibid. (internal quotation marks and citations omitted).]

By contrast, undisputed notice to the buyers and their real estate agent in this case achieves the goal of the provision: to accomplish actual notice. We are keenly aware that the actual notice did not avoid a dispute or litigation. But the litigation pertained not to the fact of notice, but to its legal implications.

Furthermore, we are not convinced that <u>Kutzin</u>, <u>supra</u>, compels a different result than we reach here. While the Court referenced the disapproving attorney's failure to comply with the method-of-delivery requirement, its focus was on the failure to disapprove at all. The Court stated:

> To rescind the contract, either party's attorney would have had to send notice of disapproval during the three-day period to both Weichert and Russo "by certified mail, by telegram, or by delivering it personally." The record reveals that the only correspondence between the attorneys and the realtors during the three-day period in question was Kozinn's September 3rd letter to Russo. That letter did not disapprove of the contract; rather, it stated that "the * * * contract is satisfactory to me as Attorney for the Seller with the exception that my clients have requested that I hold the deposit pending closing," an exception that was accepted by both Russo and Maccarone. Moreover, Kozinn did not send the letter by certified mail, nor did he send a copy to Weichert.
>
> [124 <u>N.J.</u> at 507.]

The Court's holding rested not on the method of delivery, but on the fact that Kozinn's letters did not disapprove of the agreement. Moreover, the Court did not consider the doctrine of substantial compliance, as it did not need to reach the issue whether delivery was effective.

Finally, we decline the Bar Association's invitation to endorse a revision of the current standard language to recognize

15

the advent of modern communication methods such as email and the asserted obsolescence of telegram. (The record includes no competent evidence on the availability or unavailability of telegram carriers.) We acknowledge that the Court in N.J. State Bar Ass'n, supra, did not explain the purpose served by prescribing methods of delivery of a termination notice. However, one purpose of the selected delivery methods is evident: to avoid or limit disputes and litigation over whether actual delivery was accomplished.

A party may prove that he or she has sent notice by certified mail or telegram by resorting to evidence from a third-party — the U.S. Postal Service or a telegram service. Unless the attorney giving notice personally delivers the notice himself or herself, a third person would be involved in personal delivery as well. Also, the drafters of the settlement in N.J. State Bar Ass'n, supra, apparently deemed the three required methods as generally reliable means of accomplishing delivery. Whether email or facsimile can satisfy that apparent purpose, and under what conditions, we leave to others to address.

We observe that in this case, it was not disputed that actual notice of termination was received by the buyers, their attorney and real estate agent. We do not intend to establish a general rule that delivery to the realtor by email satisfies the

A-3796-13T2

prescribed method of delivery. Rather, based on the facts and circumstances presented, considered in light of the legal principles we have described, we affirm the trial court's determination that the notice of disapproval effectively terminated the Guerrero-to-Conley agreement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION