771 A.2d 666 (2001)
339 N.J. Super. 268
Erik C. PETERSON, Plaintiff-Appellant,
v.
ESTATE OF Elma M. PURSELL, Coldwell Banker, Inc., Residential Brokerage, and Elizabeth Frank, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted March 21, 2001.
Decided April 10, 2001.
*667 Large, Scammell & Danziger, Flemington, attorneys for appellant (John F. Danziger, on the brief).
Saul, Ewing, Remick & Saul, Wilmington, DE, attorneys for respondents Coldwell Banker Residential Brokerage, Inc. and Elizabeth Frank (Francis X. Riley III, of counsel and on the brief).
*668 Maselli Warren, attorneys for respondent Estate of Elma M. Pursell (Perry S. Warren, of counsel and on the brief).
Before Judges BAIME, WALLACE, Jr., and LINTNER.
The opinion of the court was delivered by BAIME, P.J.A.D.
In New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Bds., 93 N.J. 470, 461 A.2d 1112 (1983), our Supreme Court approved a statewide settlement of differences between lawyers and real estate brokers. One requirement of that settlement was that all contracts prepared by real estate brokers must contain an attorney review clause providing each party with a three-work day escape period during which his or her lawyer may disapprove of the agreement. This appeal requires us to determine when the attorney review period begins to run.
Plaintiff buyer delivered a fully executed agreement to the listing broker who forwarded it to defendant seller's lawyer the next day. The signed contract was never delivered to defendant seller. The attorney notified plaintiff of his rejection of the agreement within three business days of receiving it. Within the review period, but before the attorney's cancellation of the contract, defendant seller entered into an agreement to sell the property to another at a higher price. Plaintiff brought this action for specific performance and for tortious interference, claiming that the attorney's disapproval of the agreement was untimely because the three-day review period commenced to run when the signed contract was delivered to the listing broker. The Chancery Division entered summary judgment dismissing plaintiff's complaint. Plaintiff appeals. We affirm.

I.
The salient facts are not in dispute. The Estate of Elma Pursell owned residential property located in Milford. Evelyn Wysocki was the executrix of the Estate. The Estate entered into a listing agreement with Coldwell Banker. Lisa Ellis was the listing agent for the property.
In August 1999, plaintiff contacted Darryl Martoccio, the attorney for the Estate, and advised him that he wished to make an offer on the Milford property. Martoccio referred plaintiff to Ellis. Plaintiff thereafter negotiated with Ellis. On Tuesday, September 21, 1999, Ellis told plaintiff that it would be in his interest to sign a contract that day so that the attorney review period would end on Friday, September 24, 1999. Ellis explained that offers were often received over weekends, and that by executing a contract that day, plaintiff could reduce the possibility the Estate would receive a higher offer.
Ellis prepared a contract for the sale of the residence and faxed it to Wysocki on Tuesday, September 21, 1999. Wysocki signed the agreement and returned it to Ellis the same day. Ellis then faxed the contract to plaintiff. Ellis informed plaintiff that the executrix had instructed her not to send her a signed contract, but instead to fax a fully executed agreement to the Estate's real estate attorney, George Walton. Ellis told plaintiff to sign the agreement and fax it to her, and she would forward it to Walton.
Pursuant to these instructions, plaintiff signed the contract and faxed it to Ellis. The fax was received in Ellis's office at 5:37 p.m., but she had left for the day. On Wednesday, September 22, 1999, Ellis faxed the signed contract to Walton for his review. Over the weekend, Elizabeth Frank, another Coldwell Banker agent, *669 showed the property to other people who submitted a bid that was substantially higher than that of the plaintiff. On Monday, September 27, 1999, Walton wrote to plaintiff and canceled the agreement.
Plaintiff instituted this action against the Estate seeking specific performance. Also named as defendants were Coldwell Banker and Frank who, it was alleged, were liable for tortious interference. Plaintiff contended that Ellis, as the listing broker, served as the Estate's agent. The principal thrust of plaintiff's contention was that his delivery of the signed contract to Ellis started the running of the attorney review clock.
The Chancery Division rejected that argument. The judge determined that the attorney review period begins to run when a fully executed contract is delivered to a party. He further concluded that the attorney review period did not commence because the signed contract had never been delivered to the Estate. The judge decided, alternatively, that Walton's rejection of the contract was timely. In reaching that conclusion, the judge observed that in calculating the three-day period for attorney review, the date of delivery is not counted. Because Walton received the contract on Wednesday, the review period was said to have begun that Thursday. Excluding the non-business weekend days, the review period was held to conclude on the following Monday. The judge thus held that plaintiff had received notice of cancellation within three work days from the date of delivery of the contract to the Estate's attorney.

II.
We reject plaintiff's argument that the attorney review period begins to run when a buyer delivers a signed contract to the listing broker. Plaintiff argues that a listing broker is the seller's agent, and, therefore, delivery of the contract to the broker serves as delivery of the contract to the seller. We, of course, recognize that a listing broker is the agent of the seller for many purposes. However, the contractual language mandated by our Supreme Court in New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Bds., 93 N.J. at 475, 461 A.2d 1112, implementing regulations promulgated by the New Jersey Real Estate Commission, and important public policy considerations mandate that the attorney review period begin to run when a conforming contract is delivered to a party.
The issue presented must be considered against the historical backdrop of conflict between attorneys and brokers over the drawing of real estate contracts. That history is recounted at length in Trenta v. Gay, 191 N.J.Super. 617, 468 A.2d 737 (Ch.Div.1983). We see no need to trek upon ground so carefully covered by Judge Cohen in that decision. Suffice it to say, the dispute pitted the "[b]roker's wish to be able to put together binding deals while the parties' momentum [pulls] in that direction" against the attorney's concern "that some brokers [might be] inclined to push the parties toward [transactions] that [might contravene] their interests." Id. at 619-20, 468 A.2d 737.
The settlement approved by our Court in New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Bds., 93 N.J. 470, 461 A.2d 1112, was designed to alleviate the tension between the two groups by balancing and accommodating their legitimate objectives. The agreement permits realtors to prepare real estate contracts, but requires such contracts to contain an attorney review clause allowing each party to seek legal advice. Id. at 475, 461 A.2d 1112. The clause must provide that the contract will be legally binding at the end of the three-day review period unless an *670 attorney for the buyer or seller disapproves of the agreement. Id. at 475-76, 461 A.2d 1100; see also Calvert v. K. Hovnanian at Galloway, VI, Inc., 128 N.J. 37, 41-42, 607 A.2d 156 (1992); Bassford v. Trico Mortg. Co., Inc., 273 N.J.Super. 379, 382, 641 A.2d 1132 (Law Div.1993), aff'd o.b., 273 N.J.Super. 228, 641 A.2d 1054 (App.Div.1994). The settlement requires the clause to provide that the three-day review period begins to run "from the date of delivery of the signed contract to the [b]uyer and the [s]eller." New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Bd., 93 N.J. at 476, 461 A.2d 1112. Saturdays, Sundays, and legal holidays are to be excluded in counting the three-day period. Ibid.
The Real Estate Commission adopted implementing regulations. See 18 N.J.R. 1677(a); 18 N.J.R. 2112(a); 19 N.J.R. 551(a). The regulations adopt the essence of the clause as mandated by the settlement, and explain the rights of the parties in greater detail. N.J.A.C. 11:5-6.2(g)2. Two of the regulations are particularly instructive in resolving the issue presented. N.J.A.C. 11:5-6.2(g)2 expressly states that the review period is to commence upon the "delivery of the signed contract to the [b]uyer or [s]eller." To carry out this provision, N.J.A.C. 11:5-6.2(a)4 requires real estate brokers to "immediately deliver to all parties ... a clear copy with original signatures [of a] fully executed instrument...." The onus is thus on the realtor to deliver any fully executed contract to the parties.
The contract in this case incorporated the attorney review clause required by the settlement and by N.J.A.C. 11:5-6.2(g)2. The contractual and regulatory language is crystal clear. The attorney review period is to run from the date of delivery of a signed contract to a party. We discern no sound basis to depart from the clear import of the contractual and regulatory mandate. Had it been envisioned that delivery of a contract to the listing broker would begin the attorney review period, that would have been stated explicitly.
Zapanta v. Isoldi, 212 N.J.Super. 678, 515 A.2d 1298 (Ch.Div.1986), upon which plaintiff heavily relies, is clearly inapposite. There, the seller delivered a signed contract to the buyer's agent. The agreement had already been reviewed and approved by both the seller's and buyer's lawyers. Next to her signature, the seller inserted a future date. The Chancery Division held that delivery of the signed contract to the buyer's agent constituted an unequivocal acceptance of the terms of the agreement, and that insertion of a future date next to the seller's signature had no impact on the binding nature of the transaction. Id. at 687, 515 A.2d 1298. The judge further concluded that the attorney review clause was not implicated, id. at 681, 515 A.2d 1298, because "neither [the] buyer[ ] nor [the] seller[ ] sign[ed] [the contract] until their attorneys had first reviewed its terms." Id. at 692, 515 A.2d 1298; but see Levison v. Weintraub, 215 N.J.Super. 273, 521 A.2d 909 (App.Div.1987) (prior approval by attorney does not abrogate three-day review period set forth in contract). To the extent that Zapanta may have some continuing vitality, the holding of that decision has no applicability here.
Not only does plaintiff's argument violate the plain language of the attorney review provision, but it ignores the reality of the real estate transaction and, indeed, common sense. Denesevich v. Moran, 211 N.J.Super. 554, 557, 512 A.2d 505 (App. Div.1986). A broker's interest "lay solely in negotiating a signed contract and obtaining a commission." Ibid. "[A] broker's role is to bring the parties together and [to] act as a conduit for negotiations." Ibid. (citing Martins Ferreira v. Jayess *671 Corp., 214 F.Supp. 723, 727 (D.N.J.1963)). "Its goal is simply to put the deal together." Ibid. (citing Trenta v. Gay, 191 N.J.Super. at 619, 468 A.2d 737). In approving the settlement agreement, the Supreme Court provided for the intervention of an attorney because the interests of the broker and those of a party may not be congruent. To clothe the broker with the attributes of a fiduciary in this context so as to impute delivery to a party by reason of delivery to the broker is unrealistic. Ibid.
We thus insist on strict adherence to the contractual and regulatory language. We agree with the Chancery Division judge that delivery of the signed agreement to Ellis's office did not start the attorney review period. Because the contract was never delivered to Wysocki, the review period never commenced. But even if Wysocki's alleged instruction to Ellis to deliver the signed contract directly to Walton constitutes a waiver of the seller's right under the contractual and regulatory language, an issue we do not decide, it is undisputed that Walton did not receive the agreement until Wednesday, September 22, 1999. The parties agree that in calculating the three-work-day period for attorney review, the date of delivery is not counted. See Kargen v. Kerr, 248 N.J.Super. 91, 95-96, 590 A.2d 255 (Ch. Div.1991). The attorney review period thus commenced on Thursday, September 23, 1999 and concluded the following Monday, September 27, 1999. Walton's rejection of the contract was thus timely.

III.
We also affirm that portion of the summary judgment dismissing plaintiff's claim against Coldwell Banker and Frank for tortious interference. In Carmagnola v. Hann, 233 N.J.Super. 547, 559 A.2d 478 (App.Div.1989), we invalidated a regulation promulgated by the Real Estate Commission that required all real estate contracts subject to attorney review to contain "an agreement to honor" clause effectively barring brokers from "show[ing][the] property to other prospective purchasers" during the review period. Id. at 550, 559 A.2d 478. Citing the Supreme Court's approved settlement, we said that "the attorney review clause renders enforceability of realtor-drawn contracts illusory, at least during the three day review period." Ibid. We held that the "agreement to honor" mandated by the contested regulation collided with the underlying purpose of the settlement, i.e., to protect parties against being bound by broker-prepared contracts without the opportunity to obtain adequate protection of their separate interests. Id. at 552, 559 A.2d 478. We noted in passing that "the plenary power of either party's attorney to cancel a contract render[ed] problematic enforcement of the [agreement to honor]," adding that "[a]rguably, no damage [could] flow to an aggrieved party from violation of [such an agreement] if timely disapproval by an attorney abrogates the underlying contract." Ibid. n. 3.
We agree with the Chancery Division judge that plaintiff's tortious interference claim is derivative in that it stands or falls on plaintiff's right to enforce the contract. Because plaintiff had no right to enforce the contract for the sale of the property, his tortious interference claim was properly dismissed.
Affirmed.