SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Michael Conley, Jr. v. Mona Guerrero (A-65-15) (076928)**

**Argued January 17, 2017 -- Decided April 3, 2017**

**Solomon, J., writing for a unanimous Court.**

In this appeal, the Court determines whether the attorney-review provision of a standard form real estate contract, which specifies that notice of disapproval must be transmitted to the real estate agent or broker by certified mail, telegram, or personal service, must be strictly enforced.

On January 12, 2014, plaintiffs Michael Conley, Jr., and Katie M. Maurer (Buyers) signed a contract to purchase a condominium from defendant Mona Guerrero (Seller). The real estate agent prepared, and the parties used, a standard form real estate contract. Seller signed the contract on January 14, 2014, and the executed agreement was delivered the next day. Both the offer and acceptance were transmitted via e-mail and/or fax.

The agreement included an attorney-review clause, mandated by the Court in New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards (Bar Ass'n), 93 N.J. 470, 476-77, modified, 94 N.J. 449 (1983), and N.J.A.C. 11:5-6.2(g)(2), which gave the parties' respective attorneys three business days to review the contract before it became legally binding. If Buyers' or Seller's attorney disapproved the contract, the clause required that he or she notify the "REALTOR(S) and the other party . . . within the three-day period." Any notice of disapproval was required to be sent to the "REALTOR(S) by certified mail, by telegram, or by delivering it personally."

A bidding war began on the same day that the attorney-review period commenced, and Seller accepted a higher bid from defendants Michele Tanzi and Brian Kraminitz.

One day before the attorney-review period expired, Seller's attorney e-mailed and faxed a letter to Buyers' attorney disapproving the contract. After the deadline passed, Buyers' attorney e-mailed a letter to the agent, and faxed Seller's attorney a copy, stating that "the 3 days within which an attorney may terminate this contract ha[ve] expired. The contract is now in full force and effect."

Buyers then filed a breach-of-contract complaint in the Superior Court, Law Division, demanding specific performance and requesting a temporary restraining order to enjoin the sale of the condominium to anyone other than Buyers. Buyers claimed that because the three-day period within which notification must have been communicated had passed, and neither Buyers, their attorney, nor their agent received proper notification of disapproval, "the contract became effective."

The trial court denied the application for a temporary restraining order, and both parties filed cross motions for summary judgment. The court granted defendants' motion and dismissed the complaint. Buyers appealed, and the Appellate Division affirmed the trial court's decision. 443 N.J. Super. 62 (App. Div. 2015). The panel found that the agreement detailed the method of delivering a notice of disapproval to the real estate agent only; any form of actual notice to Buyers was sufficient; and Buyers' right to notice of disapproval was satisfied here. Id. at 68-69.

The Court granted Buyers' petition for certification. 244 N.J. 526 (2016).

**HELD**: In this case, because Buyers received actual notice of disapproval within the three-day attorney-review period by a method of communication commonly used in the industry, the notice of disapproval was valid. The Court also exercises its constitutional authority over the practice of law and finds that an attorney's notice of disapproval of a real estate contract may be transmitted by fax, e-mail, personal delivery, or overnight mail with proof of delivery. Notice by overnight mail will be effective upon mailing. The attorney-review period within which this notice must be sent remains three business days.

1. In 1982, the NJSBA filed a suit against REALTORS seeking a ruling that licensed real estate brokers or salespersons engage in the unauthorized practice of law when they prepare contracts for the sale or lease of property. The Court reviewed the final consent judgment upon joint application of the parties under its constitutional powers governing the practice of law. Bar Ass'n, supra, 93 N.J. at 472. The Court approved the final consent judgment, with modifications, and specifically noted that it may modify the agreement in the future. Id. at 474. (pp. 10-13)

2. In 1987, the Real Estate Commission added Section (g) to N.J.A.C. 11:5-6.2, requiring "licensees" in the State, including real estate agents and brokers, to comply with the terms mandated in Bar Ass'n, supra, 93 N.J. at 475-81. Section 6.2(g) requires every contract for the sale of certain real estate, including the property at issue here, to contain the following language within its attorney-review clause: "The attorney must send the notice of disapproval to the Broker(s) by certified mail, by telegram, or by delivering it personally." (pp. 13-14)

3. The Court has not decided whether an attorney's disapproval letter must follow the precise notification procedures detailed in the attorney-review clause. In Kutzin v. Pirnie, 124 N.J. 500, 508 (1991), the Court commented in dicta on the failure of both parties to comply with the method-of-delivery provision. Gaglia v. Kirchner, 317 N.J. Super. 292, 298 (App. Div.), certif. denied, 160 N.J. 91 (1999), left open the question central to this appeal: whether an individual can rely on the other party's failure to abide by the method-of-notice provision to enforce the contract. (pp. 15-17)

4. The Bar Ass'n Court was concerned first and foremost with protecting consumers' rights. The Court did not draft the language of the settlement. Rather, the parties chose the three methods of communication to notify the broker of dissatisfaction with the contract. Bar Ass'n, supra, 93 N.J. at 476, 480. The Bar Ass'n Court contemplated that a court would have the flexibility to grant relief without strictly adhering to the settlement agreement's terms because the Court explicitly granted courts the power to address, "in the most appropriate manner under the given circumstances," "questions of the interpretation, application, and general adherence to or enforcement of the settlement . . . that may arise and affect the public interest." Id. at 474. (pp. 18-19)

5. In cases following Bar Ass'n, the Appellate Division has honored effectuating the purpose of the attorney-review clause. In Peterson v. Estate of Pursell, 339 N.J. Super. 268, 273-75 (App. Div. 2001), the Appellate Division found the attorney-review clause to require that the three-day review period begin on the date the signed contract is delivered to a party, not its agents. The panel found this rule supported the purpose of the attorney-review clause— to protect the parties' interests from the real estate broker. In Levison v. Weintraub, 215 N.J. Super. 273, 274-75, 277 (App. Div.), certif. denied, 107 N.J. 650 (1987), the panel stated that when "attorney disapproval is registered within three days there can be no contract, regardless of prior approvals," finding that this holding supported the attorney-review clause's purpose. And in Romano v. Chapman, 358 N.J. Super. 48, 52 (App. Div.), certif. denied, 176 N.J. 431 (2003), the panel based its decision on the need to effectuate the broad purpose of the attorney-review clause and not on a strict interpretation of its language. (pp. 19-22)

6. As the appellate panel observed, strict enforcement of the notification provision here would result in the forfeiture of Seller's right to review the contract with counsel and disapprove it within the attorney-review period. Holding that the notice here—which was actually and indisputably received by Buyers within the three-day window —was deficient because of the manner in which it was transmitted would elevate form over the protective purpose for which the attorney-review provision was adopted. The Court declines to reach such a result. (pp. 22-23)

7. The Court reserved its right to modify the settlement reached in Bar Ass'n and does so: notice of disapproval of a real estate contract may be transmitted by fax, e-mail, personal delivery, or overnight mail with proof of delivery. Notice by overnight mail will be effective upon mailing. The attorney-review period within which this notice must be sent remains three business days. The Court commends this matter to the Real Estate Commission for consideration of amendments to N.J.A.C. 11:5-6.2(g) consistent with the Court's holding. The Court recognizes that it may need to modify the attorney-review clause again in the future. (pp. 23-25)

The judgment of the Appellate Division is **AFFIRMED** as modified, and the matter is referred to the Civil Practice Committee.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.**

MICHAEL CONLEY, JR. and KATIE
M. MAURER,

    Plaintiffs-Appellants,

       v.

MONA GUERRERO, BRIAN
KRAMINITZ, and MICHELE TANZI,

    Defendants-Respondents.


       Argued January 17, 2017 – Decided April 3, 2017

       On certification to the Superior Court,
       Appellate Division, whose opinion is
       reported at 443 N.J. Super. 62 (App. Div.
       2015).

       William J. Kearns argued the cause for
       appellants (Kearns & Duffy, attorneys).

       Martin Liberman argued the cause for
       respondent Mona Guerrero.

       Robert J. Machi argued the cause for
       respondents Brian Kraminitz and Michele
       Tanzi (Morgan Melhuish Abrutyn, attorneys;
       Mr. Machi and Joshua A. Heines, on the
       brief).

       Barry S. Goodman argued the cause for amicus
       curiae New Jersey Realtors® (Greenbaum,
       Rowe, Smith & Davis, attorneys; Mr. Goodman
       and Steven B. Gladis, on the brief).

       F. Bradford Batcha argued the cause for
       amicus curiae New Jersey State Bar
       Association (Thomas H. Prol, President,
       attorney; Mr. Prol, of counsel; Mr. Batcha,
       Stuart J. Lieberman, Michael G. Sinkevich,
       Jr., and Heather G. Suarez, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

In 1983, this Court affirmed a final consent judgment for a settlement agreement between the New Jersey State Bar Association and the New Jersey Association of Realtor Boards. New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards (Bar Ass'n), 93 N.J. 470, 476-77, modified, 94 N.J. 449 (1983). The terms of the settlement provide that real estate brokers and salespersons may prepare contracts to sell or lease real property, so long as a standard form is used that includes a three-day period for attorney review. If, during this review period, an attorney disapproves the contract, he or she must notify the other party and the other party's real estate agent or broker. If no notice of disapproval is sent within the three days, however, the contract becomes enforceable. The standard attorney-review provision specifies that notice of disapproval must be transmitted to the real estate agent or broker by certified mail, telegram, or personal service.

Plaintiffs Michael Conley, Jr., and Katie M. Maurer (Buyers) made an offer to purchase a condominium from defendant Mona Guerrero (Seller), and, a few days later, Seller signed and executed the contract. Before the three-day attorney-review period expired, Seller's attorney sent Buyers' attorney and their realtor notice of disapproval by e-mail and fax, rather

2

than by the methods approved under our 1983 holding and prescribed in the parties' contract -- certified mail, telegram, or personal service. Buyers sued for specific performance, claiming the contract was enforceable because Seller's notification of disapproval was sent improperly.

We are called upon to determine whether the attorney-review provision of a standard form real estate contract must be strictly enforced, thereby nullifying Seller's notice of disapproval and requiring enforcement of the real estate contract. We conclude that, because Buyers received actual notice of disapproval within the three-day attorney-review period by a method of communication commonly used in the industry, the notice of disapproval was valid. We also exercise our constitutional authority over the practice of law and find that an attorney's notice of disapproval of a real estate contract may be transmitted by fax, e-mail, personal delivery, or overnight mail with proof of delivery. Notice by overnight mail will be effective upon mailing. The attorney-review period within which this notice must be sent remains three business days.

I.

The pertinent undisputed facts of record are as follows. On January 12, 2014, Buyers signed a contract to purchase a condominium from Seller. Weichert Realtors was the Listing and

3

Selling Broker on this transaction, and a real estate agent from Weichert acted as a dual agent for the parties. The agent prepared, and the parties used, a standard form real estate contract. Seller signed the contract on January 14, 2014, and the executed agreement was delivered the next day. Both the offer and acceptance were transmitted via e-mail and/or fax.

The agreement included an attorney-review clause, mandated by this Court in Bar Ass'n and N.J.A.C. 11:5-6.2(g)(2), which gave the parties' respective attorneys three business days to review the contract before it became legally binding. If Buyers' or Seller's attorney disapproved the contract, the clause required that he or she notify the "REALTOR(S) and the other party . . . within the three-day period."[1] Any notice of disapproval was required to be sent to the "REALTOR(S) by certified mail, by telegram, or by delivering it personally."

A bidding war began on the same day that the attorney-review period commenced, and Buyers were informed that higher

---

[1] In a subsequent modification to New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards (Bar Ass'n), 93 N.J. 470 (1983), we held "that the term 'Realtor' may be used in the ATTORNEY REVIEW clause instead of 'Broker' by any person who is duly authorized by the National Association of Realtors to use that term." N.J. State Bar Ass'n v. N.J. Ass'n of Realtor Bds., 94 N.J. 449, 449 (1983). As such, while Bar Ass'n, supra, 93 N.J. at 476-77, and N.J.A.C. 11:5-6.2(g)(2)(3) use only the term "Broker(s)," the contract at issue here used appropriate language to apply the method-of-notification provision to the dual real estate agent.

4

offers were submitted for the property.  In response, Buyers increased their offer amount and implored Seller to agree to the sale.  The next day, however, Seller accepted a higher bid from defendants Michele Tanzi and Brian Kraminitz (Tanzi).

One day before the attorney-review period expired, Seller's attorney e-mailed and faxed a letter to Buyers' attorney disapproving the contract.  The dual real estate agent was copied on the e-mail.  Nevertheless, after the deadline passed, Buyers' attorney e-mailed a letter to the agent, and faxed Seller's attorney a copy, stating that "the 3 days within which an attorney may terminate this contract ha[ve] expired.  The contract is now in full force and effect."

Buyers then filed a breach-of-contract complaint in the Superior Court, Law Division, against Seller and Tanzi (collectively, defendants), demanding specific performance and requesting a temporary restraining order to enjoin the sale of the condominium to anyone other than Buyers.  Buyers argued that "no attorney notified any realtor involved in the transaction by certified mail, by telegram or by personal delivery as is required if the contract was disapproved."  Consequently, Buyers claimed that because the three-day period within which notification must have been communicated had passed, and neither Buyers, their attorney, nor their agent received proper notification of disapproval, "the contract became effective."

5

The trial court denied the application for a temporary restraining order, finding that Buyers failed to establish a reasonable probability of success on the merits and that the equities favored Tanzi as an "innocent buyer[] . . . that entered into a contract to purchase the property, and now ha[s] been forced to enter into litigation."

Both parties filed cross motions for summary judgment because the facts were "largely uncontroverted." The court granted defendants' motion for summary judgment and dismissed Buyers' complaint. Buyers appealed, and the Appellate Division affirmed the trial court's decision. Conley v. Guerrero, 443 N.J. Super. 62, 68 (App. Div. 2015). The panel found that the agreement detailed the method of delivering a notice of disapproval to the real estate agent only; any form of actual notice to Buyers was sufficient; and Buyers' right to notice of disapproval was satisfied here. Id. at 68-69.

The panel questioned whether Buyers could be able to enforce their agent's right to notice by the prescribed methods. Id. at 69. Assuming Buyers' ability to do so, the appellate panel found that the specific methods of delivering notification delineated in the contract were not material, and to force Seller to forfeit her right to disapprove the contract would be inappropriate. Id. at 69-70. The Appellate Division reasoned that the notice requirements were imposed on the parties by the

6

courts, not through the bargaining process, and therefore, could be relaxed in the interests of justice. Id. at 70. The panel also found that Seller's attorney "substantially compl[ied] with the notice requirement" because the "undisputed notice to the buyers and their real estate agent . . . achieve[d] the goal of the provision: to accomplish actual notice." Id. at 70-71.

We granted Buyers' petition for certification. 244 N.J. 526 (2016). We also granted amicus curiae status to the New Jersey State Bar Association (NJSBA) and New Jersey REALTORS[2] (REALTORS).

## II.

Buyers argue that the trial court and appellate panel modified the Court's decision in Bar Ass'n when they ruled that Seller's attorney could disapprove the contract by fax and e-mail, rather than the three methods specified in Bar Ass'n: telegram, certified mail, and in-person delivery. By allowing alternative methods, Buyers assert that the lower courts usurped this Court's exclusive authority to regulate the rules governing the practice of law. In addition, Buyers contend that the contract should be strictly enforced because it is unfair for

---

[2] New Jersey REALTORS was formerly known as the New Jersey Association of REALTOR Boards. This organization represented real estate professionals in Bar Ass'n, which created the attorney-review requirement at issue in this case.

7

the courts to hold realtors -- but not attorneys -- to the letter of Bar Ass'n.

Defendants ask this Court to affirm the decision of the Appellate Division. They argue that the Court should find substantial compliance with the notice provision because the e-mail and fax sent by Seller's attorney provided actual notice to Buyers and the agent. Defendants assert that if the Court were to insist on strict enforcement of the notice provision, it would result in a "disproportionate forfeiture" for Tanzi, who bought the house in good faith and has been living there for approximately two years. In addition, according to defendants, strict enforcement would "result in a forfeiture of [Seller's] right to disapprove the contract."

According to defendants, common practice in real estate law has changed dramatically since the Court's decision in Bar Ass'n thirty-three years ago. As such, defendants argue that this Court should not adopt a formalistic rule that ignores the reality of real estate transactions, in which e-mail and fax are routinely used to communicate and exchange contracts. To support this point, Seller submits that it defies logic to allow the signed contract to be delivered by e-mail and fax -- which happened here -- yet not allow disapproval of the same contract in the same manner.

Amicus NJSBA supports defendants' contentions. It asks the Court to affirm the Appellate Division and to "take steps to reassess the transmission requirements established in the [Bar Ass'n] case over 30 years ago."

Amicus REALTORS also argues in support of defendants. It asserts that the contract language from Bar Ass'n is anachronistic and that future contracts should allow communication "by fax, by email, or by a reputable overnight courier." REALTORS argues that "the decision below was correct as a matter of logic," but concedes that relying on the substantial compliance doctrine could endanger the Bar Ass'n settlement. Instead, REALTORS urges that the Court modify the allowable method of delivery for notices of disapproval in real estate contracts and apply it retroactively to this case.

III.

Our review of a summary judgment ruling is de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We apply the same standard as the trial court. Ibid. That is, summary judgment will be granted if there is no genuine issue of material fact and "the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)).

A.

9

Our decision as to whether defendants are entitled to judgment as a matter of law is guided by Bar Ass'n. That case was precipitated by State v. Bander, 56 N.J. 196 (1970), which was decided more than ten years earlier. In Bander, the defendant was a licensed real estate broker who used a blank legal form as his skeleton for a contract to sell a certain property. Id. at 198. The defendant added provisions he created himself and, eventually, the document was signed by both the sellers and purchasers. Id. at 198-99. The defendant was then charged with the unauthorized practice of law, under the now repealed N.J.S.A. 2A:170-78(a). Id. at 199 ("Any person not licensed as an attorney or counselor at law . . . [who] [e]ngages in this state in the practice of law . . . [i]s a disorderly person." (quoting N.J.S.A. 2A:170-78(a) (repealed))).

N.J.S.A. 2A:170-81(d), however, exempted licensed real estate brokers who drafted real estate contracts from criminal liability under N.J.S.A. 2A:170-78. Ibid. The municipal and superior court determined that this exemption was unconstitutional and, thus, found the defendant guilty. Ibid. According to those tribunals, the N.J.S.A. 2A:170-81(d) exemption was a legislative attempt to authorize certain practices of law -- conduct which goes directly against this Court's "exclusive jurisdiction over admission of the practice of law and discipline of those admitted," pursuant to Article

10

IV, Section 2, Paragraph 3 of the New Jersey Constitution. Id. at 200.

This Court reversed the defendant's conviction, finding that the Legislature enacted N.J.S.A. 2A:170-78 "to aid the judiciary in its regulation of the practice of law by providing a mode of punishment for those found to have engaged in some unlawful practice." Id. at 201. The Court concluded that the exemption provision was not an attempt by the Legislature to permit real estate brokers to practice law, but rather to shield their practices from criminality under N.J.S.A. 2A:170-78. Ibid. The Court declined to decide whether the defendant's conduct actually constituted the unauthorized practice of law because such a determination was not needed under its holding and because the record was insufficiently developed to make that assessment. Id. at 202. The Court suggested, however, that "an answer might be obtained in a separate suit for an injunction" against this type of act "or for a declaratory judgment," in which a fully developed record would allow "a valued and intelligent reply to such an inquiry." Id. at 202-03.

About a decade later, in New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards, 186 N.J. Super. 391, 393 (Ch. Div. 1982), the NJSBA acted on the Bander Court's suggestion and filed a suit against REALTORS seeking a declaratory judgment and injunctive relief. NJSBA sought a ruling that licensed real

11

estate brokers or salespersons engage in the unauthorized practice of law when they prepare contracts for the sale or lease of property. Ibid.

After several settlement attempts and two public hearings, the parties reached a final agreement. Id. at 393-96. Under the proposed final settlement, real estate brokers were allowed to prepare real estate contracts, provided they include an attorney-review clause that (1) gives the parties' respective attorneys three days to review the contract and (2) requires an attorney to notify the broker of disapproval within the three-day review period. Id. at 395.

The trial court found that

> [t]he proposed settlement [accommodates] the interests of realtors and attorneys by allowing the realtor to consummate the contract phase of the transaction, with attorneys handling the actual transfer of title. Most importantly, however, it serves to protect the public interest by making the contract subject to prompt attorney review if either buyer or seller so desires.
>
> [Id. at 396.]

The court entered a final consent judgment that incorporated the proposed terms with minor modifications, including the requirement that a disapproving attorney must notify the other party, in addition to the broker. Id. at 397-98.

This Court reviewed the final consent judgment upon joint application of the parties, NJSBA and REALTORS, "under our

12

constitutional powers governing the practice of law." Bar Ass'n, supra, 93 N.J. at 472 (citing N.J. Const. of 1947 art. VI, § II, ¶ 3; R. 1:21 (regulation of practice of law)). The Court found that "[t]o the extent that there is an inevitable or unavoidable overlap between the realty and legal professions, the public's interest is safeguarded through the settlement's attorney[-]review provisions and the Court's continuing supervisory control." Id. at 474. Importantly, we approved the final consent judgment, with modifications, and specifically noted that we may modify the agreement in the future. Ibid.

In 1987, the Real Estate Commission added Section (g) to N.J.A.C. 11:5-6.2, requiring "licensees" in the State, including real estate agents and brokers, to comply with the terms mandated in Bar Ass'n, supra, 93 N.J. at 475-81. N.J.A.C. 11:5-6.2(g) has not been amended since.

B.

Section 6.2(g) requires every contract for the sale of certain real estate, including the property at issue here, to contain the following language within its attorney-review clause:

> 3. Notice of Disapproval
>
> If an attorney for the Buyer or the Seller reviews and disapproves of this contract, the attorney must notify the Broker(s) and the other party named in this contract within the three-day period. Otherwise this contract

13

> will be legally binding as written. <u>The attorney must send the notice of disapproval to the Broker(s) by certified mail, by telegram, or by delivering it personally.</u> The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the Broker's office. The attorney may but need not also inform the Broker(s) of any suggested revisions in the contract that would make it satisfactory.
>
> [N.J.A.C. 11:5-6.2(g)(2) (emphasis added).]

The regulation also requires that the contract include "the names and full addresses of all persons to whom a Notice of Disapproval must be sent in order to be effective." N.J.A.C. 11:5-6.2(g)(3).

Our courts have been called on several times to interpret the attorney-review provisions in real estate contracts. See, e.g., Romano v. Chapman, 358 N.J. Super. 48, 56-57 (App. Div.) (holding that once attorney approves contract, contract is binding, even if attorney attempts to disapprove it before review deadline), certif. denied, 176 N.J. 431 (2003); Peterson v. Estate of Pursell, 339 N.J. Super. 268, 273-74 (App. Div. 2001) (holding that attorney-review period begins to run "when a conforming contract is delivered to a party"); Levison v. Weintraub, 215 N.J. Super. 273, 274-75, 278 (App. Div.) (holding that when one attorney, acting as attorney-in-fact, signs contract on party's behalf, second attorney for that party may still disapprove contract), certif. denied, 107 N.J. 650 (1987).

14

However, this Court has not been called on to decide whether an attorney's disapproval letter must follow the precise notification procedures detailed in the attorney-review clause.

This Court did evoke the prescribed means of notification in Kutzin v. Pirnie, in which we held that the contract was enforceable because it was not explicitly disapproved within the three-day attorney-review period. 124 N.J. 500, 507 (1991). In that case, during the attorney-review period, the sellers' attorney sent a letter to the buyers' attorney, asking that the deposit be transferred to an escrow account pending closing. Id. at 503-04. The buyers responded to the sellers' attorney by letter, also within the three-day period, agreeing to transfer the funds and attaching a rider with proposed amendments to the contract. Id. at 504. Several weeks later, however, the buyers backed out of the deal. Id. at 505. Although we found dispositive the fact that the contract was not clearly disapproved within the three-day attorney-review period, in dicta we commented on the failure of both parties to comply with the method-of-delivery provision. Id. at 508. We noted that the sellers' attorney failed to send the letter directly to the buyers also and that the buyers' attorney failed to send the letter by certified mail. Ibid.

Later, the Appellate Division decided Gaglia v. Kirchner, which is more germane to the issue now before us. 317 N.J.

15

Super. 292 (App. Div.), certif. denied, 160 N.J. 91 (1999). In Gaglia, supra, the buyer's attorney sent a letter -- only to the sellers' attorney -- by fax and ordinary mail, and not personally or by telegram or certified mail. Id. at 296. The letter -- sent within the three-day attorney-review period -- explicitly disapproved the contract in its current condition and requested certain modifications that would render the contract acceptable. Id. at 296-97. Several business days later, the sellers' attorney faxed a letter to the buyer's attorney, stating, "I have received your disapproval of the contract . . . . My clients do not wish to pursue this matter any more with your clients. The contract shall be considered void." Id. at 298. The buyer then brought an action to enforce the contract, arguing that his attorney's disapproval letter did not terminate the contract because it failed to abide by the requisite notification procedures. Ibid. The trial court and Appellate Division agreed that "the party who invoked the attorney[-]review provision to annul the contract could not avoid the consequences of his doing so by relying on his own deviations from the procedure prescribed by N.J.A.C. 11:5-6.2." Ibid.

Although it limited a party's ability to benefit from his or her own mistakes, Gaglia left open the question central to this appeal:  whether an individual can rely on the other

16

party's failure to abide by the method-of-notice provision to enforce the contract.

Indeed, even though the cases cited above are instructive, none dictate the outcome in this case. Buyers rely on Peterson, supra, to support their argument that courts must strictly enforce the precise terms of the attorney-review clause. 339 N.J. Super. at 276 ("We thus insist on strict adherence to the contractual and regulatory language."). Peterson is distinguishable, however, because, while the contract language was "crystal clear," id. at 275, it dealt with a different mandate -- the point at which the attorney-review period begins, id. at 271. The panel found no good reason to deviate from the contract's language. Id. at 275.

In Kutzin, supra, we suggested that failure to abide by the method-of-delivery provision would render a disapproval ineffective, but those statements were dicta. 124 N.J. at 508. Likewise, the Appellate Division's holding in Gaglia, supra, does not control here. There, the panel upheld the buyer's disapproval notice even though he did not abide by the contractually specified methods of delivery. 317 N.J. Super. at 298-99. However, the disapproval notice was upheld because the buyer later sought to enforce that very contract, arguing that it was still valid because his own disapproval letter deviated from the requirements of N.J.A.C. 11:5-6.2. Id. at 298. Here,

17

by contrast, Buyers rely on Seller's noncompliance with contract terms.

IV.

There is no directly controlling precedent before us.  We are influenced, however, by our decision in Bar Ass'n and subsequent Appellate Division cases that have placed great weight on the underlying purpose when interpreting and enforcing the attorney-review provision.

A.

To begin with, the Bar Ass'n Court was concerned first and foremost with protecting consumers' rights.  The Court approved of the settlement agreement because it resolved the question of brokers' unauthorized practice of law, and, "[m]ost importantly, . . . it serve[d] to protect the public interest by making the contract subject to prompt attorney review if either buyer or seller so desires."  Bar Ass'n, supra, 93 N.J. at 474 (quoting trial court opinion); see also Calvert v. K. Hovnanian at Galloway, VI, Inc., 128 N.J. 37, 45 (1992) (holding that, "[m]ost importantly, what [Bar Ass'n] sought to protect was not the private interest of lawyers but rather the public's right to be protected from inadequate information" by allowing parties to real estate transactions opportunity to consult with counsel); Sears Mortgage Corp. v. Rose, 134 N.J. 326, 356 (1993)

18

(explaining that Bar Ass'n settlement aimed to "protect the interests of buyers and sellers").

Notably, the Court did not draft the language of the settlement. Rather, the parties chose the three methods of communication to notify the broker of dissatisfaction with the contract. Bar Ass'n, supra, 93 N.J. at 476, 480. In accepting these methods, we do not perceive an intent on this Court's part to convert them into the focus of the Bar Ass'n opinion itself. Similarly, we do not glean from the Bar Ass'n opinion an intent that strict adherence is necessary, so long as the interests of the consumer are protected. In fact, we believe that the Bar Ass'n Court contemplated that a court would have the flexibility to grant relief to the parties before it without strictly adhering to the settlement agreement's terms because the Court explicitly granted courts the power to address, "in the most appropriate manner under the given circumstances," "questions of the interpretation, application, and general adherence to or enforcement of the settlement . . . that may arise and affect the public interest." Id. at 474.

B.

Turning to cases following Bar Ass'n, it appears that the Appellate Division has honored effectuating the purpose of the attorney-review clause above all else.

19

For example, in Peterson, supra, the buyer delivered the executed agreement to the real estate broker, who then faxed the contract to the seller's attorney the next day. 339 N.J. Super. at 272. The issue before the panel was when the three-day attorney-review period began, given that the parties involved received the contract on different days. Id. at 271. The Appellate Division found the attorney-review clause to be "crystal clear" and to require that the three-day review period begin on the date the signed contract is delivered to a party, not its agents. Id. at 275. The Peterson panel found this rule supported the purpose of the attorney-review clause -- to protect the parties' interests from the real estate broker, whose interests may be more focused on quickly closing a deal. Id. at 276.

In Levison, supra, the sellers' attorney signed a real estate contract on the sellers' behalf, acting under a power of attorney, arguably evidencing approval of the contract. 215 N.J. Super. at 274. The sellers then forwarded the contract to a second attorney for review, who disapproved the contract within the three-day period. Id. at 274-75. The panel found the contract to be void, stating that when "attorney disapproval is registered within three days there can be no contract, regardless of prior approvals." Id. at 277. The Appellate Division found that this holding supported the attorney-review

20

clause's purpose, which "is to protect parties against being bound by broker-prepared contracts without the opportunity to obtain adequate protection of their separate interests." Ibid.

Levison was clarified by Romano, supra, where, on the second day of the review period, each party's attorney wrote to her counterpart approving the contract and stating that the attorney review was complete. 358 N.J. Super. at 50-51. On the third day, however, the sellers accepted a higher offer, and a disapproval letter was hand-delivered to the buyers' counsel. Id. at 51. The buyers sued, arguing that the attorney-review clause was not meant "to prevent the creation of a binding contract" before the three-day review period expired, "so long as the parties' attorneys have approved its contents." Ibid. In addition, the buyers argued that Levison was distinguishable because the first attorney in that case was an agent acting as a seller and not as legal counsel approving the contract terms. Id. at 51-52.

The Appellate Division agreed with that distinction and found that, although an attorney executed the agreement for the sellers in Levison, the sellers in that situation were still entitled to full attorney review as provided for in the contract's provisions. Id. at 56. The appellate panel reiterated that the purpose of the attorney-review provision is to "give the parties an opportunity for attorney review and

21

consultation" before a real estate contract becomes enforceable. Id. at 54. With that purpose in mind, the panel found that "once the attorney has the opportunity to review the agreement and consult with the client, and the agreement is approved, with or without changes, the client cannot back out of the agreement, even within the three-day period." Id. at 57. The panel based its decision on the need to effectuate the broad purpose of the attorney-review clause, "to give the parties an opportunity for their respective attorneys to review the form agreement," and not on a strict interpretation of its language. Id. at 52.

Furthermore, we find the purpose-focused reasoning applied in these decisions to comport with well-settled principles of contract law. This Court will generally not rewrite a valid contract to replace it with a better one, Quinn v. Quinn, 225 N.J. 34, 45 (2016), but, when strict enforcement of a contract provision would frustrate the contract's overarching purpose, the courts will intervene, Cooper v. Government Employees Insurance Co., 51 N.J. 86, 93-94 (1968).

As the appellate panel observed, strict enforcement of the notification provision here would result in the significant forfeiture of Seller's right to review the contract with counsel and disapprove it within the attorney-review period. Conley, supra, 443 N.J. Super. at 69-70. Such a consequence would undermine the purpose of the attorney-review clause. Thus, this

22

case presents precisely the type of circumstance where strict enforcement is not called for in order to fulfill the consumer-oriented purpose of the notice-of-disapproval obligation. In addition, actual notice of disapproval of the contract was conveyed to the attorney for the client. That is not disputed. Moreover, because the broker was operating in a dual capacity for Buyers and Seller in the original transaction, there can be no practical argument that the broker did not know of the disapproval. In any event, the broker here is not the complaining party.

In short, holding that the notice here -- which was actually and indisputably received by Buyers within the three-day window -- was deficient because of the manner in which it was transmitted would elevate form over the protective purpose for which the attorney-review provision was adopted in Bar Ass'n and included in Section 11:5-6.2(g) of the New Jersey Administrative Code. We decline to reach such a result.

V.

Finally, we specifically reserved our right to modify the settlement agreement reached in Bar Ass'n, supra, 93 N.J. at 474, and we do so today. Currently, the regulation provides that real estate agents and brokers must receive notice by certified mail, telegram, or personal delivery. N.J.A.C. 11:5-6.2(g)(2)(3); Bar Ass'n, supra, 93 N.J. at 476-77; see N.J.

23

State Bar Ass'n v. N.J. Ass'n of Realtor Bds., 94 N.J. 449, 449 (1983) (allowing term "realtor" to replace "broker" in attorney-review provision when warranted).

However, notice by telegram is obsolete. As amici point out, fax and e-mail are "faster and more reliable" than telegrams were. Shelly Freierman, Telegram Falls Silent Stop Era Ends Stop, N.Y. Times (Feb. 6, 2006), http://www.nytimes.com/2006/02/06/technology/telegram-falls-silent-stop-era-ends-stop.html. In fact, it appears that fax and e-mail have become the predominant, customary methods by which professionals in the industry communicate. Thus, amending the Bar Ass'n settlement is necessary to acknowledge customary procedure in the profession and to recognize advances in technology.

Therefore, notice of disapproval of a real estate contract may be transmitted by fax, e-mail, personal delivery, or overnight mail with proof of delivery. Notice by overnight mail will be effective upon mailing. The attorney-review period within which this notice must be sent remains three business days. We also commend this matter to the Real Estate Commission for consideration of amendments to N.J.A.C. 11:5-6.2(g) consistent with our holding. Finally, we recognize that the Court may need to modify the attorney-review clause again in the future. Bar Ass'n, supra, 93 N.J. at 474.

24

VI.

For the reasons set forth above, the judgment of the Appellate Division is affirmed as modified, and we hereby refer this matter to the Civil Practice Committee.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.

25