**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2867-19

SCOTT D. GALKIN, D.M.D.,
and NEW JERSEY DENTAL
ASSOCIATION,

      Plaintiffs-Appellants,

v.

SMILEDIRECTCLUB, LLC,
DANNY LEEDS, D.D.S., and
ISAAC V. PERLE, D.M.D.,

      Defendants-Respondents,

and

ROBERT M. DEROSSO, D.M.D.,

      Defendant.

_____

          Argued April 28, 2021 – Decided June 11, 2021

          Before Judges Whipple and Firko.

          On appeal from the Superior Court of New Jersey,
          Chancery Division, Middlesex County, Docket No.
          C-000019-19.

Arthur Meisel argued the cause for appellants.

Kevin M. Capuzzi argued the cause for respondents (Benesch, Friedlander, Coplan & Aronoff, LLP, attorneys; Kevin M. Capuzzi, Michael J. Barrie, and J. Erik Connolly, on the brief).

PER CURIAM

Plaintiffs Scott D. Galkin, D.M.D., and the New Jersey Dental Association appeal orders of January 27, 2020, and March 6, 2020. The first order granted in part defendants' motion to seal the court record, and the second order granted defendants' motion for summary judgment. We affirm as to both.

Plaintiffs are Galkin, a dentist, and the New Jersey Dental Association, a non-profit corporation. Defendants Danny Leeds, D.D.S., and Isaac Perle, D.M.D., are licensed dentists who provide telehealth dental services to clients in New Jersey. Defendant SmileDirectClub, LLC (SDC), is a dental support organization that offers non-clinical support services to licensed dentists. SDC provides clear aligners for professional corporations or groups of licensed dentists after assessing patients using at-home impression kits and 3D optical scanning. At the heart of this case is the nature of the relationship among the defendants.

Leeds is the sole owner of Smile of New Jersey, P.A. (SNJ), a New Jersey company located in Tennessee that places advertisements on behalf of and

2

contracts with dentists in New Jersey, but has no physical office in New Jersey. SNJ also contracts with SDC for non-clinical administrative services, including billing and records management. Leeds has an employment contract with SNJ. SDC sources clear aligners from an FDA-certified manufacturer and impression kits from a lab for SNJ.

On January 28, 2019, plaintiffs filed a complaint for injunctive relief in Middlesex County, asserting defendants SDC, Leeds, and Perle[1] are engaging in the unlawful corporate practice of dentistry and unlawful practice of dentistry, N.J.S.A. 45:6-12, and are illegally engaging in direct-to-consumer advertising, sale, and delivery of aligners to straighten teeth in violation of N.J.S.A. 45:6-19.

In March 2019, SDC, Leeds, and Perle filed a motion to dismiss plaintiffs' complaint, which the court denied. Defendants moved for reconsideration, which the court also denied in June 2019. To protect against the public disclosure of its proprietary information during the litigation, defendants moved for, and the court issued, a protective order on August 2, 2019. The protective order dictated that restrictions be in place forbidding unauthorized disclosure of

---

[1] A third dentist, Robert DeRosso, was named as a defendant in plaintiffs' complaints but was granted summary judgment, and that order was not appealed.

A-2867-19

certain confidential or proprietary information. All parties to the litigation were permitted through the order to designate as confidential documents: answers to interrogatories, pleadings, or other material. The judge also denied plaintiffs' motion for summary judgment.

Later, on January 27, 2020, the court granted defendants' motion to seal the court record in part, prohibiting public disclosure of agreements and related documents. The court directed defendants to file revised transcripts that redact only confidential information pertaining to SDC's business model and written agreements between SDC and SNJ. The court found SDC satisfied its burden to show that it would be seriously injured if such information were publicly disclosed. On March 6, 2020, the court denied plaintiffs' second motion for summary judgment and granted defendants' cross-motion for summary judgment after determining SDC does not practice dentistry, nor does it control SNJ. This appeal followed.

On appeal, plaintiffs argue the court erred granting summary judgment because defendants are unlawfully engaged in the corporate practice of dentistry and that it was also error to enter an order protecting portions of the record from disclosure. We review entry of summary judgment de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017).

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

"When no issue of fact exists, and only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court." Templo Fuente De Vida, 224 N.J. at 199 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). But the decision to seal or unseal portions of the court record is left to the discretion of the trial judge. Hammock ex rel Hammock v. Hoffmann-LaRoche, Inc., 142 N.J. 356, 380 (1995).

## I.

N.J.S.A. 45:6-1 to -69 (the Dental Practice Act) regulates and governs the practice of dentistry in New Jersey. The State's corresponding administrative code, N.J.A.C. 13:30-1.1 to -8.26, applies to:

> [A]ll licensed dentists, licensed dental hygienists, registered dental assistants, limited registered dental assistants, and holders of dental clinic permits, and all applicants seeking licensure to engage in the practice of

5

dentistry, dental hygiene, and dental assisting, and applicants seeking permits to operate dental clinics.

[N.J.A.C. 13:30-1.1(b).]

Failure to comply with this rule "may be deemed professional misconduct and may subject the licensee, registrant or permit holder to disciplinary action pursuant to the provisions of 45:1-14 . . . ." N.J.A.C. 13:30-1.1(c).

Plaintiffs argue that defendants violated the "common law" by engaging in the "unlawful corporate practice of dentistry." They cite to N.J.S.A. 45:6-12, which states "[n]o corporation shall practice or continue to practice, offer or undertake to practice, or hold itself out as practicing dentistry." The statute further states:

> No person shall practice or continue to practice dentistry as an officer, agent or employee of any corporation, or under the name of any corporation. No person shall practice or continue to practice dentistry under any firm name or trade name or under any name other than his true name, but nothing herein contained shall prohibit the practice of dentistry by a partnership under a firm name containing nothing but the surname of every member of the partnership, and that nothing herein contained shall prohibit a licensed dentist from practicing under his own name or under a firm name containing only the surnames of each member of such firm. Every person or corporation, violating any of the foregoing provisions of this section shall be subject to a penalty of three hundred dollars for the first offense and six hundred dollars for the second and each subsequent offense.

A-2867-19

> Every person practicing dentistry under a firm name as herein authorized and every person practicing dentistry or as an employee of another shall cause his name to be conspicuously displayed and kept in a conspicuous place at the entrance of the place where such practice shall be conducted, and any person who shall neglect to cause his name to be displayed as herein required, shall be liable to a penalty of one hundred dollars.
>
> [N.J.S.A. 45:6-12.]

Addressing the relevant provisions, the motion judge found SDC is not engaged in the corporate practice of dentistry, nor is SDC in violation of N.J.S.A. 45:6-12 because it does not control clinical treatment to patients or the dentists with whom it contracts. The motion judge also rejected plaintiffs' contention that a Law Division decision in Allstate Insurance Co. v. Schick, 328 N.J. Super. 611 (Law Div. 1999), and our Supreme Court's decision in Allstate Insurance Co. v. Northfield Medical Center, 228 N.J. 596 (2017), bar SDC from its business arrangement as "enabling unlicensed persons to own dental practices," and so do we.

In Schick, insurer Allstate accused defendant medical providers of creating "a group of sham medical corporations that appeared to be owned by plenary licensed physicians as required by applicable administrative regulations." 328 N.J. Super. at 615. Allstate argued that the defendants'

scheme was hatched in order to "circumvent administrative regulations requiring that diagnostic facilities be owned by plenary licensed physicians and regulations prohibiting plenary licensed physicians from being employed by chiropractors or non-licensees." Id. at 616. The documents memorializing the relationship between the physicians and medical corporations had specious authenticity. Id. at 623. A significant portion of Schick pertained to alleged insurance fraud (the Insurance Fraud Protection Act, N.J.S.A. 17:33A-1 to -30) and violation of medical licensing regulation through the New Jersey Board of Medical Examiners, N.J.A.C. 13:35-2.6, which are not of moment in the present case. See id. at 614, 627-29. Schick can be further distinguished from the case at bar because the administrative regulations and legislative statutes in question for dental licensing and medical licensing are different. The court in Schick ultimately decided that there were issues of fact related to the supervision of licensed physicians, specifically related to potentially forged documents, and that this precluded summary judgment in favor of the defendant medical providers. Id. at 616.

In Northfield, the insurer again contended that defendants—in that case, a chiropractor and his management company—knowingly violated the Insurance Fraud Prevention Act. 228 N.J. at 599. The Court evaluated this fraud claim

A-2867-19

through the lens of regulations for a medical practice, in specific, codified at N.J.A.C. 13:35-6.16. Id. at 601. In Northfield, a medical doctor who owned a corporation did not participate in his patients' treatment. Id. at 626. The Court in Northfield decided the defendants had violated Board standards by putting an unlicensed chiropractor in control of a medical practice. Id. at 615.

Schick and Northfield do not apply here. SNJ is a valid professional corporation owned and controlled by a licensed dentist; there are no credible allegations that SNJ is a sham corporation, that it is substantially controlled by SDC, or that it was formed to evade insurance requirements or statutory regulations. Moreover, SNJ is not a plenary medical practice, which would be subject to a different set of regulations.

In addition, SNJ is not owned or controlled by unlicensed strangers to the profession. On this point, plaintiffs argue that a succession agreement between SDC and SNJ would allow SDC to effectively take ownership of SNJ through an SDC designee. However, the succession agreement requires SNJ be owned by a New Jersey-licensed orthodontist or dentist. Thus, the safeguards in place in the agreements maintain management and ownership of SNJ under the Dental Practice Act; its operations and those of SDC must comport with the statute.

Plaintiffs also argue that SDC is engaged in the "direct-to-consumer advertising, sale and delivery of clear-plastic orthodontic aligners to straighten teeth in violation of N.J.S.A. 45:6-19."

N.J.S.A. 45:6-19 defines a person engaged in the practice of dentistry as someone who, in pertinent part:

> (1) Uses a dental degree, or the terms "mechanical dentist" or the use of the word "dentist" in English or any foreign language, or designation, or card, device, directory, poster, sign, or other media whereby he represents himself as being able to diagnose, treat, prescribe or operate for any disease, pain, deformity, deficiency, injury, or physical condition of the human tooth, teeth, alveolar process, gums, cheek, or jaws, or oral cavity and associated tissues; or
>
> (2) Is a manager, proprietor, operator, or conductor of a place where dental operations are performed; or
>
> (3) Performs dental operations of any kind gratuitously . . . or
>
> (4) Uses himself or by any employee, uses a Roentgen or X-ray machine for dental treatment, dental radiograms, or for dental diagnostic purposes; or
>
> (5) Extracts a human tooth or teeth, <u>or corrects or attempts to correct malpositions of the human teeth or jaws</u>; or
>
> (6) Offers and undertakes, by any means or method, to diagnose, treat or remove stains or concretions from human teeth or jaws; or

10

. . . .

> (8) <u>Takes impressions of the human tooth, teeth, jaws, or performs any phase of any operation incident to the replacement of a part of a tooth, teeth, or associated tissues</u>; or
>
> (9) Performs any clinical operation included in the curricula of recognized dental schools or colleges.
>
> [(Emphasis added.)]

The Dental Practice Act also outlines what specific activities are <u>not</u> considered practice of dentistry:

> (7) The making of artificial restorations, substitutes, or appliances for correction of disease, loss, deformity, malposition, dislocation, fracture, or injury to the jaws, teeth, lips, gums, cheeks, palate, or cases, models, or from impressions furnished by a licensed and registered dentist, on written prescription only; <u>provided, that such prosthetic or orthodontic appliances, or the services rendered in the construction, repair, or alteration thereof, shall not be advertised, sold or delivered, directly or indirectly, to the public by the dental technician or dental laboratory as principal or agent.</u>
>
> [N.J.S.A. 45:6-19(7) (emphasis added).]

Because SDC markets orthodontic appliances on behalf of licensed dentists and does not treat patients, it is not a dental technician or dental laboratory; therefore, this provision of the Act does not apply to SDC. The aligners provided to patients are prescribed by dentists or orthodontists.

11

The management services agreement executed between SDC and Smile of NJ explicitly lists services SDC will provide; for example, recruitment and supervision of non-clinical personnel, payroll and taxes, patient record maintenance, laboratory services, and various additional non-clinical services. In addition, the agreement states SDC:

> [S]hall not interfere in any manner or to any extent with the performance of any [c]linical [p]ersonnel's medical or professional judgment. Nothing contained in this [a]greement shall be construed to permit the ManagementCo[2] to (a) engage in the practice of medicine, dentistry or dental hygiene, it being the sole intention of the [p]arties that the professional healthcare services performed by the [p]ractice are to be rendered by the [p]ractice and its [c]linical [p]ersonnel, (b) own or maintain any part of the [p]ractice, (c) control or operate the [p]ractice in any manner, (d) engage any person to practice medicine, dentistry or dental hygiene or (e) control, influence, or attempt to control or influence or otherwise interfere with the exercise of the [c]linical [p]ersonnel's independent professional judgment regarding the diagnosis or treatment of a dental disease, disorder or physical condition.

The motion judge found that SDC's marketing informs that patients' dental treatment is handled by licensed dentists and orthodontists. The dentists do not work for SDC, and SDC only provides non-clinical services to the contracting

---

[2] SDC Holding LLC refers to itself in its agreements as "ManagementCo."

A-2867-19

parties. Therefore, because SDC is not engaged in dentistry according to the statutory definition, defendants' marketing materials do not violate N.J.S.A. 45:6-19.

## II.

Finally, we reject plaintiffs' argument that the judge abused his discretion in granting defendants' motion to seal, and in denying plaintiffs' motion to vacate the order granting motion to seal. The motion judge retains discretion over the decision to seal documents. Rule 1:2-1 states:

> All trials, hearings of motions and other applications, pretrial conferences, arraignments, sentencing conferences (except with members of the probation department) and appeals shall be conducted in open court unless otherwise provided by rule or statute. If a proceeding is required to be conducted in open court, no record of any portion thereof shall be sealed by order of the court except for good cause shown, as defined by R[ule] 1:38-11(b), which shall be set forth on the record.
>
> [(Emphasis added).]

Rule 1:38-11(b) states that "good cause" to seal a record exists when:

> (1) Disclosure will likely cause a clearly defined and serious injury to any person or entity; and
>
> (2) The person's or entity's interest in privacy substantially outweighs the presumption that all court and administrative records are open for public inspection pursuant to R[ule] 1:38.

13

Good cause must be measured by the standard of "reasonableness." <u>Hammock</u>, 142 N.J. at 386.

In the January 10, 2020 hearing, the motion judge found that the agreements among defendants should be kept under seal: "I find that the only reason that conclusory language is pretty -- pretty clear that the commercial interest confidentiality information is -- should be protected from public disclosure." He later added that "[t]he Supreme Court said that if it's clearly something that should be confidential information. I don't think any evidence [is] necessary. I think it's clear that the confidential information is there." The order specifies that SDC has satisfied its burden of showing that public disclosure of agreements and depositions would cause defendants serious injury because the documents "contain highly sensitive information that, if put in the wrong hands, could competitively harm [d]efendants." We discern no abuse of the court's discretion. All of the remaining arguments raised by plaintiffs lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2867-19